UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------X

DAVE H. WILLIAMS and
REBA W. WILLIAMS,

        Plaintiffs/Counterclaim
        Defendants

        v.

RANDALL BEAN  ET. AL.,

        Defendants/Counterclaim
        Plaintiffs

-------------------------------------------------------X

CIVIL ACTION

NO.: 3:16-cv-01633 (VAB)

**PLAINTIFFS/COUNTERCLAIM-DEFENDANTS'
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
<u>SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P 56</u>**

**LAW OFFICES OF DAVID C. BERG**
425 Madison Avenue, 19th Floor
New York, New York 10017
(212) 829-0400
*Attorneys For Plaintiffs Dave H. Williams
and Reba W. Williams*

On the Brief:
David C. Berg, Esq. (phv08546)
Anne M. Christon, Esq. (phv08547)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................i

INTRODUCTION ............................................................................................... 1

ARGUMENT....................................................................................................... 1

I.    Legal Standard Pursuant To F.R.C.P. 56......................................................... 1

II.   SUMMARY JUDGMENT SHOULD BE GRANTED IN PLAINTFFS' FAVOR
WITH RESPECT TO THE CLAIMS ...................................................... 3

    A. The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To
Summary Judgment Against C. Bean With Respect To The First Count For
Invasion Of Privacy ....................................................................................... 3

    B. The Undisputed Material Facts Demonstrate That Plaintiffs Are
Entitled To Summary Judgment Against R. Bean, E. Black, and
C. Bean With Respect To The Second Count ................................................. 7

    C. The Undisputed Material Facts Demonstrate That Plaintiffs Are
Entitled To Summary Judgment Against R. Bean And E. Black
With Respect To The Third Count .................................................................. 9

III.  SUMMARY JUDGMENT SHOULD BE GRANTED IN PLAINTIFFS' FAVOR
WITH RESPECT TO THE COUNTERCLAIMS............................................ 10

    A. The Undisputed Material Facts Demonstrate That Plaintiffs Are
Entitled To Summary Judgment In Their Favor
With Respect To The Second Counterclaim ................................................ 10

    B. The Undisputed Material Facts Demonstrate That Plaintiffs Are
Entitled To Summary Judgment In Their Favor
With Respect To The Third Counterclaim As Asserted By All Defendants.................. 14

        1. Defendants Have Unequivocally Admitted that Various Of The Subject
Emails Do Not Defame Them And Thus Summary Judgment Must Be
Granted At The Outset With Regard To Each Of Those Admitted Non-
Defamatory Emails ...................................................................................... 15

2.  M. Bean Admitted That His Only Purported Ground For Claiming That The Subject Emails Defame Him Is By Imputation As A Member Of The "Bean Family" ..................................................................................................... 15

3.  Defendants Admittedly Have Not Suffered Any Monetary And/Or Reputational Damages As A Result Of Any Of The Subject Emails And Thus Summary Judgment Must Be Granted Against Each Of Them On This Basis Alone ................................................................................. 16

4.  Summary Judgment Must Be Granted Against Each Of The Defendants With Respect To The Subject Emails Which Do Not "Identify" Him Or Her ......... 17

5.  The Undisputed Facts Confirm That Certain Of The Subject Emails Are Comprised Of Non-Actionable Opinion, Rather Than Fact, And Thus Are Not Defamatory ..................................................................................... 18

6.  The Subject Emails Which Are Indisputably Not "False" Are Not Defamatory ................................................................. 21

C.  The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment In Their Favor With Respect To The Fourth And Fifth Counterclaims .................................................... 26

D.  The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment In Their Favor Against R. Bean And E. Black With Respect To The Sixth Counterclaim .................... 28

1.  The Undisputed Facts Establish That The Subject Trees Were Not "Maliciously Erected" .............................................. 29

2.  R. Bean and E. Black Admittedly Have *No* Proof Whatsoever That The "Value Of" The Bean Property Was "Impair[ed]" "Because Of" The Subject Trees .................................................................... 30

E.  The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment In Their Favor With Respect To The Seventh Counterclaim ................................................................. 31

F.  The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment In Their Favor With Respect To The Eighth Counterclaim ................................................................... 35

CONCLUSION ........................................................................................... 37

# TABLE OF AUTHORITIES

## Cases

*Abdul-Salaam v. Lobo-Wadley,*
  665 F.Supp.2d 96 (D. Conn. 2009).................................................................14

*Allen v. Verizon Wireless,* No. 3:12-cv-00482,
  2015 WL 3868672 (D. Conn. June 23, 2015) ......................................................11

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ....................................2

*Barr v. Harbor Park Assocs.,* No. CV920126722S,
  1992 WL 394541 (Conn. Super. Ct. Dec. 24, 1992) ..........................................27

*Belfiore v. N.Y. Times Co.,* 654 F. Supp. 842 (D. Conn. 1986) ............................11

*Bonanno v. Dan Perkins Chevrolet,*
  No. CV99-066602, 2000 WL 192182 (Conn. Super. Ct. Feb. 4, 2000) .......................3, 6

*Boyne v. Glastonbury,* CV064024371,
  2007 WL 2570335 (Conn. Super. Ct. Aug. 10, 2007) ........................................27

*Bradford v. Kimmerle,* No. 113078,
  1999 WL 545356 (Conn. Super. Ct. July 19, 1999). ..........................................30

*Brewer v. Town of W. Hartford,*
  No. 3:05-cv-849, 2007 WL 2904207 (D. Conn. Sept. 28, 2007) ..........................*passim*

*Carlton v. Mystic Transp., Inc.,* 202 F.3d 129 (2d Cir. 2000) ................................2

*Carney v. Amendola,*
  No. CV106003738, 2014 WL 2853836 (Conn. Super. Ct. May 14, 2014) .....................12

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)..............................................1-2, 18

*Coleman v. S. Central Conn. Regional Water Auth.,*
  No. 3:06-cv-1515, 2009 WL 350597 (D. Conn. Feb. 12, 2009). ...........................18

*Colon v. Town of W. Hartford,*
  No. 3:00-cv-168, 2001 WL 45464 (D. Conn. Jan. 5, 2001) ..............................*passim*

*Couture v. Bd. Of Ed. Of Town of Plainfield,*
  6 Conn. App. 309, 505 A.2d 432 (Conn. App. Ct. 1986) ...................................26

*Craig v. Colonial Penn Ins. Co.,*
  335 F. Supp.2d 296 (D. Conn. 2004) ........................................................5

*CSL Silicones, Inc. v. Midsun Gp., Inc.*,
   301 F. Supp.3d 328 (D. Conn. 2018) ...............................................................30

*Cunha v. Petela*, CV030284981S,
   CV030284981S, 2005 WL 3663517 (Conn. App. Ct. Dec. 14, 2005) .......................33, 34

*Cweklinsky v. Mobil Chem.* Co.,
   267 Conn. 210, 837 A.2d 759 (Conn. 2004) ...............................................14-15

*Daley v. Aetna Life & Cas. Co.*,
   249 Conn. 766, 734 A.2d 112 (Conn. 1999) ...............................................14, 16

*Davis v. Property Owners Assn.*,
   CV126006823S, 2016 WL 1099213 (Conn. Super. Ct. Feb. 24, 2016) .........................29

*Decarlo v. Priest*,
   No. CV-000177-73, 2000 WL 486852 (Conn. Super. Ct. Apr. 10, 2000) .................29-30

*Dongguk Univ. v. Yale Univ.*,
   873 F. Supp. 2d 460 (D. Conn. 2012) ......................................................14-15

*EEOC v. Day & Zimmerman NPS, Inc.*
   265 F. Supp.3d 179 (D. Conn. 2017)..........................................................1-2

*Fanion v. Radei*,
   No. 075001250S, 2009 WL 3740738 (Conn. Super. Ct. Oct. 16, 2009). ........................28

*Fernandez-Bravo v. Manchester*,
   No. 3:12-cv-01103, 2016 WL 7238791 (D. Conn. Dec. 14, 2016) ...................................2

*Fink v. Magner*, 988 F. Supp. 70 (D. Conn. 1997) ............................................9, 10

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) .............................................2

*Gallagher v. Rappaport*,
   No. Cv-960149891S, 1997 WL 240907 (Conn. Super. Ct. 1997) .........................3, 10, 12

*Gerrish v. Paul Hammick et. al.*,
   No. CV166070583S, 2018 WL 3060082 (Conn. Super. Ct. May 31, 2018)..............21-22

*Gleason v. Smolinski*,
   CV065005107S, 2009 WL 2506607 (Conn. Super. Ct. July 20, 2009) .........................3, 6

*Goodrich v. Waterbury Republican-American, Inc.*,
   188 Conn. 107, 448 A.2d 1317 (Conn. 1982) .........................................*passim*

*Grippo v. Middletown Bible Church*,
   No. CV010095682S, 2014 WL 2284071 (Conn. Super. Ct. 2004)....................................31

*Grossman v. Computer Curriculum Corp.*,
   131 F. Supp.2d 299 (D. Conn. 2000) ......................................................14, 20

*Gullong v. Nurmi*,
   CV156013784, 2016 WL 7165014 (Conn. Super. Ct. Nov. 8, 2016) ............................ 12

*Gullong v. Nurmi*,
   CV156013784, 2017 WL 960989 (Conn. Super. Ct. Feb. 8, 2017) ........................ 6, 12

*Haggerty v. Parniewski*,
   11 Conn. App. 37, 525 A.2d 984 (Conn. App. Ct. 1987) .................................................. 32

*Harp v. King*, 266 Conn. 747 (Conn. 2003) .................................................................... 7, 8

*Hauer v. ECHN Community Healthcare Foundation, Inc.*,
   No. HHDCV094046119S, 2012 WL 798861
   (Conn. Super. Ct. Feb. 16, 2012)...................................................................................... 17

*Hopkins v. O'Connor*,
   282 Conn. 821, 925 A.2d 1030 (Conn. 2007) ........................................................... 14, 16

*Izzo v. Cyril-Scott Corp.*,
   No. 3:10-cv-1954, 2012 WL 13033133 (D. Conn. July 3, 2012) ............................... 18, 19

*Jackson v. Lee*,
   51 Conn. Supp. 399, 996 A.2d 762 (Conn. Super. Ct. 2009) ........................................... 29

*Johnson v. Cheesebrough-Pond's USA Co.*,
   918 F. Supp. 543 (D. Conn. 1996) .................................................................................... 20

*Jones v. Globe Intl., Inc.*,
   3:94:CV014681995, 1995 WL 819177 (D. Conn. Sept. 26, 1995) ................................... 14

*Karls v. Alexandra Realty Corp.*,
   179 Conn. 390, 426 A.2d 784 (Conn. 1980) ............................................................... 35, 36

*Keating v. Greene*, No. FSTCV074011089S,
   2010 WL 2108481 (Conn. Super. Ct. Apr. 23, 2010) .................................................. 34, 35

*Klausner v. Estate of Borre*,
   No. 146022590S, 2014 WL 7739232 (Conn. Super. Ct. Dec. 29, 2014). .................... 26, 28

*Li v. Colonial BT, LLC*,
   14-cv-999, 2015 WL 5684060  (D. Conn. Sept. 28, 2015) .............................................. 26

*Macomber v. Travelers Prop. & Cas. Corp.*,
   277 Conn. 617, 894 A.2d 240 (2006) ................................................................................. 7

*Madera v. Hartford Housing Auth.*,
   No. CV095034046S, 2010 WL 3961257 (Conn. Super. Ct. Sept. 8, 2010) ............... 4, 7, 8

*Mara v. Otto*, CV065001188S,
   2009 WL 3285075 (Conn. Super. Ct. Sept. 9, 2009) ....................................................... 16

*Marczeski v. Law*,
   122 F. Supp.2d 315 (D. Conn. 2000) .................................................................. 17

*Master-Halco, Inc. v. Natarelli, LLC*,
   739 F. Supp.2d 104 (D. Conn. 2010)................................................................... 7

*Mercer v. Cosley*, 110 Conn. App. 283,
   955 A.2d 550 (Conn. App. Ct. 2008). ........................................................*passim*

*Milkovich v. Lorain Journal Co*., 497 U.S. 1 (1990) ..................................... 18, 19

*Palladino v. Pellini*, No. CV040199821S,
   2005 WL 590090 (Conn. Super. Ct. Feb. 2, 2005) ................................ 30, 31, 34

*Pestey v. Cushman*, 259 Conn. 345, 788 A.2d 496 (2002)................................... 27

*Pollack v. Eitelberg*, CV095011274S,
   2012 WL 6634693, (Conn. Super. Ct. Nov. 30, 2012) ......................... 17, 22, 24

*QSP, Inc. v. Aetna Cas. & Sur. Co.*,
   256 Conn. 343, 773 A.2d 906 (Conn. 2001). ....................................... 16, 17, 18

*Reichenbach v. Kraska Enterprises, LLC*,
   105 Conn.App. 461, 938 A.2d 1238 (Conn. App. Ct. 2008)............................. 35

*Ridgefield Waterside Motors, LLC v. Borg*,
   CV165015844S, 2017 WL 3332744 (Conn. Super. Ct. June 30, 2017) .... 12, 27

*Rogus v. Bayer Corp.*,
   No. 3:02-cv-1778, 2004 WL 1920989 (D. Conn. Aug. 25, 2004) ..................... 23

*Sachs v. Henwood*,
   No. CV980163554, 2001 WL 1132109 (Conn. Super. Ct. Aug. 17, 2001) .............. 30, 34

*Stefanoni v. Darien Little League, Inc.*,
   101 F. Supp.3d 160 (D. Conn. 2015) .............................................................. 14

*Stewart v. Gothie*,
   2001 WL 686851 (Conn. Super. 2001) .......................................................... 36

*Supreme Forest Prods., Inc. v. Kennedy*,
   CV166013162S, 2018 WL 1936507 (Conn. Super. Ct. Mar. 27, 2018) ......... 7, 8

*Tchernotzkas v. Friar*, No. cv04833336S,
   2005 WL 525657 (Conn. Super. Ct. Jan. 14, 2005) ................. 28, 29, 30, 32, 33

*Uyar v. Seli*,
   3:16-CV-00186, 2018 WL 1587464 (D. Conn. April 1, 2018) ..................... 2, 10

*Vasyliv v. Adesta, LLC*,
   CV 106011737S, 2010 WL 5610901 (Conn. Super. Ct. Dec. 20, 2010) ............ 3

*Villa v. Salvaggio,*
   No. CV116022543S, 2014 WL 4290436
   (Conn. Super. Ct. July 17, 2014) .................................................................. 28

*Welch-Rubin v. Sandals Corp.,*
   No. 3:03-cv-481, 2004 WL 2472280 (D. Conn. 2004) ................................ 2, 10

*Whitlock v. Uhle,*
   75 Conn. 423, 53 A. 891 (1903) .............................................................. 29, 30

*Wright v. Goord,* 554 F.3d 255 (2d Cir. 2009) ................................................ 2

*WVIT, Inc. v. Gray,* No. CV 950547689S, 1996 WL 649334,
   (Conn. Super. Ct. Oct. 25, 1996) ........................................... 3, 6, 9, 10, 11, 12

<u>Statutes and Rules</u>

F.R.C.P. 56 .................................................................................................... *passim*

Conn. Gen. Stat. § 52-480 and § 52-570 .................................................... *passim*

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 56 ("FRCP 56")[1] and D. Conn. Local Rule 56(a)(1),

Plaintiffs/Counterclaim-Defendants Dave Williams ("Mr. Williams") and Reba Williams ("Mrs.

Williams")(collectively, "Plaintiffs") by their undersigned attorneys, move for an order granting

partial summary judgment (i) in Plaintiffs' favor with respect to the First, Second, and Third

Causes of Action (the "Claims") asserted against Defendants/Counterclaim-Plaintiffs Randall

Bean ("R. Bean"), Elizabeth Black ("E. Black"), Christopher Bean ("C. Bean"), and Matthew

Bean ("M. Bean")(collectively, "Defendants") in Plaintiffs' Complaint (the "Complaint", ECF

Docket No. 1) in this action (the "Action") and (ii) against Defendants with respect to each of

their Counterclaims (the "Counterclaims")[2] asserted against Plaintiffs in Defendants' Answer

and Amended Counterclaims.  (ECF Docket No. 40).

For the reasons set forth below, in the SOF, and in the exhibits thereto, Plaintiffs

respectfully request that the Court grant the within motion (the "Motion").

**ARGUMENT**

**I.      Legal Standard Pursuant To F.R.C.P. 56**

It is well-settled in the Second Circuit that a "Court will grant a motion

for summary judgment if it determines that there is no genuine dispute of material fact and the

movant is entitled to judgment as a matter of law." *Equal Employment Opportunity Commission

v. Day & Zimmerman NPS, Inc.*, 265 F.Supp.3d 179, 190 (D. Conn. 2017) (Bolden, J.); *Celotex*

---

[1] Defined terms not otherwise defined herein shall have the meanings ascribed to them in Plaintiffs' Local Rule 56(a)(1) Statement of Undisputed Material Facts (the "SOF") filed contemporaneously herewith. Citations in the form "(SOF (Ex. ___))" and "(SOF ¶ ___)" shall refer, respectively, to the enumerated exhibits to and paragraphs in the SOF. Relevant page and line deposition transcript citations can be found in the specific, cited SOF paragraphs herein and are not repeated herein due to the volume of those citations.  Citations to enumerated paragraphs in the SOF shall incorporate by reference citations to the specific exhibits in each cited paragraph.
[2] Plaintiffs seek summary judgment with respect to all of the Counterclaims but, with regard to the Third Counterclaim, only seek summary judgment with respect to the specific communications listed in and contained within Exhibit W to the SOF.

1

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129,

133 (2d Cir. 2000); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)   Pursuant to FRCP 56,

the "moving party bears the burden of showing that no genuine dispute of material fact exists";

"[o]nce the moving party has satisfied that burden, the nonmoving party 'must set forth specific

facts demonstrating that there is a genuine issue for trial' in order to defeat the motion

for summary judgment." *Day & Zimmerman NPS, Inc.*, 265 F.Supp.3d at 190; *Carlton*, 202 F.3d

at 133-34; *Wright*, 554 F.3d at 266; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)("a party may not rely on mere

speculation or conjecture as to the true nature of the facts to overcome a motion for summary

judgment")(internal citation omitted).

 The "mere existence of *some* alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be

no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).

Summary judgment is properly granted when a party fails to "present admissible evidence in

support of their allegations; allegations alone, without evidence to back them up, are not

sufficient." *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn.

Oct. 20, 2004)(quotation omitted); *Uyar v. Seli*, 3:16-CV-00186, 2018 WL 1587464, at *7-8 (D.

Conn. April 1, 2018).

 Further, "[i]f a nonmoving party has failed to make a sufficient showing on an essential

element of his case with respect to which he has the burden of proof, then summary judgment is

appropriate." *Celotex*, 477 U.S. at 323; *Fernandez-Bravo v. Manchester*, No. 3:12-cv-01103,

2016 WL 7238791, at *3 (D. Conn. Dec. 14, 2016).

II.   **SUMMARY JUDGMENT SHOULD BE GRANTED IN
      <u>PLAINTIFFS' FAVOR WITH RESPECT TO THE CLAIMS</u>**

A.   **The Undisputed Material Facts Demonstrate That Plaintiffs
     Are Entitled To Summary Judgment Against C. Bean[3] With
     <u>Respect To The First Count For Invasion Of Privacy</u>**

Under Connecticut law, "[o]ne who intentionally intrudes physically or otherwise, upon

the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the

other for invasion of privacy, if the intrusion would be highly offensive to a reasonable

person." *Gallagher v. Rapoport*, No. CV 960149891S, 1997 WL 240907, at *2 (Conn. Super.

Ct. May 6, 1997); *WVIT, Inc. v. Gray*, No. CV 950547689S, 1996 WL 649334, at *2-3 (Conn.

Super. Ct. Oct. 25, 1996)(invasion of privacy "may be by some…form of investigation…into [a

party's] private concerns.")(*citing* Restatement (Second) of Torts §652B)).  The "fact of

surreptitiously monitoring" "in and of itself…constitutes the intrusion [of] privacy" where such

conduct "was designed to elicit information which would not be available through normal

inquiry or observation." *WVIT, Inc.*, 1996 WL 649334, at *3 (internal citation omitted).

The undisputed evidence, including C. Bean's explicit admissions at his deposition,

confirms that C. Bean "intentionally intrud[ed]…upon the solitude or seclusion of" Plaintiffs'

"private affairs or concerns" by eavesdropping on, surveilling, monitoring, and photographing

Plaintiffs and the Williams Property on various dates in, at least, June and July 2016.  *Id.*;

*Vasyliv v. Adesta, LLC*, CV 106011737S, 2010 WL 5610901, at *3 (Conn. Super. Ct. Dec. 20,

2010); *Gleason v. Smolinski*, CV065005107S, 2009 WL 2506607, at *3 (Conn. Super. Ct. July

20, 2009); *Bonanno v. Dan Perkins Chevrolet*, No. CV99-066602, 2000 WL 192182, at *1-2

(Conn. Super. Ct. Feb. 4, 2000); *Madera v. Hartford Housing Auth.*, No. CV095034046S, 2010

---

[3] Plaintiffs seek summary judgment only against C. Bean with respect to the First Count.  Plaintiffs are filing a
Stipulation of Voluntary Discontinuance with respect to Plaintiffs' claims solely against M. Bean
contemporaneously herewith.

WL 3961257, at *4-5 (Conn. Super. Ct. Sept. 8, 2010)(invasion of privacy "may…be by the use of the defendant's senses…to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars…")(*citing* Restatement (Second) of Torts §562B)). (SOF, ¶¶38-75).   By way of illustration and summary:

On July 8, 2016, C. Bean admittedly photographed Plaintiffs and the Williams Property and eavesdropped on private conversations occurring at the Williams Property.  (SOF, ¶¶42-48). On that date (July 8, 2016), C. Bean "shadowed" Plaintiffs and McMillan, "following" them "step for step" along the hedges dividing the Bean Property from the Williams Property as they walked toward the sea wall, and then brazenly climbed onto the seawall abutting the Bean Property and Williams Property, where he "star[ed]" at Plaintiffs, ignoring Mrs. Williams' alarming demand that he stop.   (SOF, ¶¶43-44).

Undeterred, after Plaintiffs and McMillan moved to Plaintiffs' porch to continue their discussion in private, C. Bean intensified his wrongdoing by photographing them and the Williams Property from the Bean Property using his mobile device.  (SOF, ¶¶45-46).  Moreover, it is undisputed that, on that date, C. Bean eavesdropped on Plaintiffs' and McMillan's private conversations at the Williams Property, reporting the contents of  such private conversations to E. Black via text message.  (SOF, ¶¶42-49).

Astoundingly, despite the fact that Mrs. Williams was visibly "emotionally quite disturbed" during C. Bean's surveillance of her on July 8, 2016, C. Bean brazenly intensified the scope and severity of his intrusive acts on July 19 and 20, 2016.  (SOF, ¶¶44, 53-63).  On those dates, C. Bean admittedly, continuously photographed and monitored the Williams Property for several hours on both dates, simultaneously reporting the private activities thereon and

transmitting photographs of same to R. Bean and E. Black via text messages "at [their] request".
(SOF, ¶¶53-63).

In conveying their monitoring "request[s]" to C. Bean on those dates, R. Bean and E.
Black broadcast to C. Bean their intense, personal animosity and rancor toward Plaintiffs, by
describing Mr. Williams and Mrs. Williams with invective, including "assholes", "freaks", and
"lunatics". (SOF, ¶¶47-49, 54-56, 61-63; Ex. R).   Indeed, R. Bean prefaced his "request" to C.
Bean for "updated" "photos" of the Williams Property with an unambiguous, hostile directive, to
wit:  "hope they are afraid of us".  (SOF, ¶62).

On each of the foregoing dates, C. Bean was the only one of the four (4) Defendants at
the Bean Property when he committed the aforesaid wrongful acts.  (SOF, ¶¶50-52, 57-59, 62,
64).  Indeed, each of the other Defendants expressly admitted that he/she lacks any personal,
firsthand knowledge whatsoever regarding C. Bean's actions on July 8, 2016, July 19, 2016, and
July 20, 2016 and, thus, have no facts whatsoever to support their denials in Defendants'
Answer[4] with respect to the First Count.  (SOF, ¶¶50-52, 57-59, 64); *Craig v. Colonial Penn Ins.
Co.*, 335 F. Supp.2d 296, 306 (D. Conn. 2004) (deposition "testimony does not create a material
dispute" without "personal knowledge about what actually happened").  Yet, C. Bean admitted
under oath at his deposition that *he does not even know his own basis* for denying the allegations
in the First Count and/or for any of his Affirmative Defenses with respect to same, as set forth in
Defendants' Answer.  (SOF, ¶38).

It is undisputed that, under the well-settled law, C. Bean's aforesaid actions were
undertaken without Plaintiffs' authorization or consent, and intruded upon Plaintiffs' "private
affairs or concerns" in a "sphere[] from which [they] could reasonably expect" C. Bean to "be

---

[4] "Defendants' Answer" shall refer to the Answer within Defendants and Counterclaim Plaintiffs' Answer and
Amended Counterclaims To Plaintiffs And Counterclaim Defendants' Complaint." (SOF, Ex. B).

excluded", namely, Plaintiffs' ***private home*** at the Williams Property. *WVIT, Inc.*, 1996 WL 649334, at *3 (internal citation omitted); *Gullong v. Nurmi*, CV156013784, 2017 WL 960989, at *9 (Conn. Super. Ct. Feb. 8, 2017) ("[s]urveillance of a person's residence has been recognized as a particularly sensitive area including a higher level of privacy…"); (SOF, ¶¶34, 42-62). Moreover, C. Bean admittedly did not have Plaintiffs' authorization to monitor, stare at, and/or photograph them and/or the Williams Property.   (SOF, ¶¶39-41).  In point of fact, the exact opposite is undisputedly true, in that Mrs. Williams vehemently directed C. Bean on July 8, 2016 not to stare at her while she is on the Williams Property. (SOF, ¶¶44-45, Ex. Q).

Unquestionably, C. Bean's invasion of Plaintiffs' privacy was "highly offensive to a reasonable person" and was, in fact, irrefutably "highly offensive" to Plaintiffs. *Gleason*, 2009 WL 2506607, at *3; *Bonanno*, 2000 WL 192182, at *1-2; (SOF, ¶¶44, 65).  Moreover, the overwhelming evidence confirms that C. Bean's foregoing acts were purposely *calculated* to be "highly offensive" to Plaintiffs and, indeed, targeted to cause them to be "afraid of" Defendants. (SOF, ¶¶29, 44, 45, 56, 62, 65, 71-75) (emphasis added).   Underscoring the malicious intent and effect of C. Bean's aforesaid acts, on July 19, 2016 (the date on which C. Bean admittedly photographed the Williams Property), C. Bean text messaged M. Bean "I went SUPing and waved at her, cunt", to which M. Bean replied "Love getting in their face". (SOF, ¶75).

Solely by virtue of the secretive and furtive nature of C. Bean's conduct, it was "highly offensive to a reasonable person" under the well-settled law.  (SOF, ¶¶39-63); *WVIT, Inc*, 1997 WL 644904, at *2 ("secret" "recording" is "highly offensive to a reasonable person" "no matter where it occurred and no matter what it related to")(*citing WVIT, Inc. v. Gray*, No. 950547689S, 1996 WL 649334, at *4 (Conn. Super. Ct. Oct. 25, 1996)).

6

As a result of the foregoing, Plaintiffs have suffered damages, including the cost to install the Subject Trees as a remedial measure to protect against further invasions of Plaintiffs' privacy by C. Bean from the Bean Property, as well as loss of income due to Plaintiffs' diversion from their professional literary endeavors.  (SOF, ¶¶32-33, 67-68).

Accordingly, summary judgment should be granted against C. Bean with respect to the First Count.

**B.    The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment Against R. Bean, E. Black, and C. Bean[5] With Respect To The Second Count**

A civil conspiracy requires proof of "(1) a combination between two or more persons, (2) to do  a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff." *Harp v. King*, 266 Conn. 747, 778-79 (Conn. 2003); *Supreme Forest Prods., Inc. v. Kennedy*, CV166013162S, 2018 WL 1936507, at *2-3 (Conn. Super. Ct. Mar. 27, 2018); *Madera*, 2010 WL 3961257, at *4-5.

Under Connecticut law, "a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Macomber v. Travelers Property & Casualty Corp.*, 277 Conn. 617, 636, 894 A.2d 240 (2006); *Master-Halco, Inc. v. Natarelli, LLC*, 739 F. Supp.2d 104, 106-07 (D. Conn. 2010).  Moreover, "a plaintiff must show that the agreement" amongst the conspirators "was the obtaining of a particular objective, and that the act taken in furtherance thereof caused the plaintiff's injury." *Master-Halco, Inc.*, 739 F. Supp. at 107-08.

The undisputed evidence established that R. Bean, E. Black, and C. Bean "combine[d]" to invade Plaintiffs' privacy, as confirmed by their express admissions and substantial text message correspondence which they exchanged simultaneously with C. Bean's monitoring,

---

[5] Plaintiffs do not seek summary judgment against M. Bean with respect to the Second Count.

eavesdropping on, and photographing Plaintiffs and the Williams Property on July 8, 2016, July 19, 2016, and July 20, 2016.   (SOF, ¶¶29,42-70); *Harp*, 266 Conn. at 778-79; *Supreme Forest Prods., Inc.*, 2018 WL 1936507, at *2-3; *Madera*, 2010 WL 3961257, at *5 ("conspiracy...to unreasonably intrude on the plaintiff's privacy" can be established where parties "directed or conspired...to record [] telephone conversations without [party's] knowledge").

It is undisputed that, on at least July 8, 2016, July 19, 2016, and July 20, 2016, R. Bean and E. Black expressly, affirmatively "request[ed]" and instructed C. Bean to monitor, photograph, and continuously "update" them regarding the private activities occurring at the Williams Property on those dates and, thus, R. Bean and E. Black admittedly "directed" C. Bean's aforesaid wrongful conduct.  *Madera*, 2010 WL 3961257, at *5; *Harp*, 266 Conn. at 780-781; (SOF, ¶¶47-49, 53-56, 60-63).

As discussed, *supra*, and demonstrated by the substantial record, C. Bean did, in fact, monitor, eavesdrop on, and photograph Plaintiffs and the Williams Property pursuant to R. Bean's and E. Black's "request" – and their continuous instructions via text messages sent by them on those dates -- and, thus, indisputably an "act [was] done" (indeed, a multitude of "acts" (*see*, *supra*)) "in furtherance of" R. Bean's, E. Black's, and C. Bean's "conspiracy" to invade Plaintiffs' privacy.  (SOF, ¶¶47-49, 53-56, 60-63, 69-70); *Madera*, 2010 WL 3961257, at *5; *Harp*, 266 Conn. at 780-781.

Accordingly, summary judgment should be granted against R. Bean, E. Black, and C. Bean with respect to the Second Count.

C.   **The Undisputed Material Facts Demonstrate That Plaintiffs**
     **Are Entitled To Summary Judgment Against R. Bean and**
     **E. Black With Respect To The Third Count**

Under Connecticut law, a party is liable for aiding and abetting a tort when "(1) the party

whom the defendant aids … perform[s] a wrongful act that causes an injury; (2) the defendant

[is] generally aware of his role as part of an overall illegal or tortious activity at the time that he

provides the assistance; [and] (3) the defendant must knowingly and substantially assist the

principal violation." *Fink v. Magner*, 988 F. Supp. 70, 72 (D. Conn. 1997).  The substantial

evidence conclusively shows that R. Bean and E. Black aided and abetted C. Bean's invasion of

Plaintiffs' privacy.  (*See, supra*, at pps. 3-7); *WVIT, Inc.*, 1996 WL 649334, at *3-4; (SOF, ¶¶6,

48-50, 54-57, 62-64, 70-71).

First, C. Bean tortiously invaded Plaintiffs' privacy and, thus, "perform[ed] a wrongful

act that cause[d]" injury to Plaintiffs.  (*See, supra*, at pps. 3-7); *Id.*; *Fink*, 988 F. Supp. at 72.

Second, indisputably, R. Bean and E. Black were "generally aware of" their "role[s] as

part of" C. Bean's "tortious activity", as confirmed by the contemporaneous, voluminous text

messages exchanged between them and C. Bean on the subject dates.  *Id.*; *Fink*, 988 F. Supp. at

72; (SOF, ¶¶47-49, 53-56, 60-63, 69-70).

Third, R. Bean and E. Black "knowingly and substantially assist[ed]" C. Bean's "tortious

activity" by, *inter alia*, providing him with unrestricted access to the Bean Property, including

during the period of C. Bean's tortious conduct, instructing C. Bean to photograph the Williams

Property and "update" them regarding the activities thereon, and by providing C. Bean with, and

paying for, the mobile device which he used to photograph Plaintiffs and the Williams Property,

and by which he sent such photographs and reported private information he "heard" while

eavesdropping on Plaintiffs, to R. Bean and E. Black. *Id.*; *Fink*, 988 F. Supp. at 72; (SOF, ¶¶69-70).

Accordingly, summary judgment should be granted against R. Bean and E. Black with respect to the Third Count.

## III.   SUMMARY JUDGMENT SHOULD BE GRANTED IN PLAINTIFFS' FAVOR WITH RESPECT TO THE COUNTERCLAIMS

### A.   The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment In Their Favor With Respect To The Second Counterclaim

As discussed, *supra*, an invasion of privacy claim requires proof of an "intentional[] intru[sion]... upon the solitude or seclusion of another or his private affairs or concerns" which "would be highly offensive to a reasonable person." *Gallagher*, 1997 WL 240907, at *2; *WVIT, Inc.*, 1996 WL 649334, at *2-3. The Second Counterclaim is based on barebones allegations that Plaintiffs "intruded upon the seclusion of the Bean Family in their Property" through "numerous provocative, harassing, and intimidating actions, as set forth above" (*i.e.*, in Paragraphs 78-81 of the Counterclaims)(the "Alleged Harassing Actions"). (SOF (Ex. B at ¶¶78-81, 118)).

As demonstrated below, in light of Defendants' utter failure and inability to "present admissible evidence in support of" an invasion of privacy claim, summary judgment should be granted in Plaintiffs' favor with respect to the Second Counterclaim. (SOF, ¶¶76-81); *Welch-Rubin*, 2004 WL 2472280, at *1 (quoting *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)); *Uyar*, 2018 WL 1587464, at *8.

First, as established by Defendants' own respective deposition testimony, Plaintiffs indisputably did not "intentionally intrude[]...upon" Defendants' "solitude or seclusion", by virtue of the Alleged Harassing Actions or otherwise. (SOF, ¶¶76-81); *Gallagher*, 1997 WL 240907, at *2; *WVIT, Inc.*, 1996 WL 649334, at *2-3.

Specifically, at C. Bean's deposition, he admitted that he cannot identify <u>any</u> "harassing" or "intimidating" actions whatsoever by Plaintiffs to support the Second Counterclaim.  (SOF ¶¶76-77); *Belfiore v. N.Y. Times Co.*, 654 F. Supp. 842, 851-52 (D. Conn. 1986)(summary judgment granted when "admissions contained in the deposition testimony of the plaintiffs contradict the allegations of the …Complaint").

Likewise, M. Bean unambiguously conceded that he did not witness <u>any</u> of the Alleged Harassing Actions, and explicitly testified that he cannot identify <u>any</u> instance of harassment of him whatsoever by Plaintiffs while he was at the Bean Property.  (SOF, ¶78); *Allen v. Verizon Wireless*, No. 3:12-cv-00482, 2015 WL 3868672, at *22 (D. Conn. June 23, 2015)(summary judgment granted where "there is no evidence in the record that would support a finding that [defendant's] actions constituted an 'intentional interference' with [plaintiff's] interest in seclusion.").

<u>Second</u>, summary judgment is also warranted with respect to the Second Counterclaim on the additional, independent ground that the record is devoid of any "admissible evidence" whatsoever that Plaintiffs "intrude[d]" upon Defendants' *private* affairs or concerns." *Gallagher*, 1997 WL 240907, at *2 (emphasis added); *WVIT, Inc.*, 1996 WL 649334, at *2-3; *Welch-Rubin*, 2004 WL 2472280, at *1.

Rather, the Alleged Harassing Actions are comprised entirely of legally innocuous conduct, *i.e.*, Plaintiffs' purportedly standing and/or positioning themselves in ***public*** (on the public "sidewalk" and/or "street") and/or on ***Plaintiffs' own property*** (the Williams Property), as well as purported, innocuous "gestures" and "point[ing]" – while Plaintiffs were ***in public*** and/or on the ***Williams Property***.  (SOF (<u>Ex. B</u> at ¶¶78-81)).  Defendants have not alleged and/or proven – and cannot, under the applicable law -- that any of the Alleged Harassing Actions

11

implicate, in any way whatsoever, any of Defendants' "private affairs" – on the Bean Property or otherwise. *Ridgefield Waterside Motors, LLC v. Borg*, CV165015844S, 2017 WL 3332744, at *4 (Conn. Super. Ct. June 30, 2017)("[n]either defendant alleges that these contacts were made in an area where they had a right to privacy or seclusion"); *Carney v. Amendola*, No. CV106003738, 2014 WL 2853836, at *18 (Conn. Super. Ct. May 14, 2014)("no evidence" of "intrusion of a protected space"); *Gullong v. Nurmi*, CV156013784, 2016 WL 7165014, at *3 (Conn. Super. Ct. Nov. 8, 2016)("the plaintiff's presence ***on the street outside the defendants' home*** does not constitute an intrusion into a private place, and the ***gesturing and screaming*** are not alleged to concern the defendants' ***private*** matters")(emphasis added).[6]

Third, critically, in no uncertain terms, R. Bean unequivocally conceded at his deposition that the Second Counterclaim is based on purported acts of "intrusion" ***by third-parties***, *not Plaintiffs, i.e.*, "people taking pictures" of Defendants "in [their] own yard in [their] own home" and "thronging around" "saying…there's the people that were in the spy suit." (SOF, ¶81). It is irrefutable that purported "intrus[ive]" actions by third-parties – *not Plaintiffs* – cannot form the basis for an invasion of privacy claim by Defendants *against Plaintiffs*. *Gallagher*, 1997 WL 240907, at *2; *WVIT, Inc.*, 1996 WL 649334, at *2-3.

Fourth, the record is wholly devoid of evidence of any purported "intrusion" by Plaintiffs which would be "highly offensive" to "a reasonable person" and/or which was, in fact, "highly offensive" to any of the Defendants. *Gallagher*, 1997 WL 240907, at *2; *WVIT, Inc.*, 1996 WL 649334, at *2-3; (SOF, ¶¶76-81).

---

[6] In *Gullong*, the plaintiff amended his complaint to remedy his ill-pled invasion of privacy claim with allegations that the subject surveillance was "capable of intruding upon the interior of [defendant's] home" and "exposing" defendant's "private views, affairs and/or concerns". *Gullong v. Nurmi*, CV156013784, 2017 WL 960989, at *1-4 (Conn. Super. Ct. Feb. 8, 2017). In stark contrast, as discussed, *supra*, here, Defendants admittedly lack *any* evidence whatsoever of any such "private" intrusion by Plaintiffs with respect to Defendants' seclusion and, notably, do not even *allege* same in the Counterclaims. *Id.*; (SOF ¶¶76-81).

In point of fact, astonishingly, Defendants' allegation in the Counterclaims that as "a further result of the Williams' harassment, the Bean Family is reluctant to go outside" and "avoid inviting friends and family to visit" was exposed as an outright sham by virtue of Defendants' express admissions at their depositions that they regularly hosted widely-attended parties at the Bean Property and, in point of fact, invited approximately fifty (50) people to the Bean Property *throughout the summer of 2016* – the precise period during which Defendants contend Plaintiffs "intruded upon the seclusion of the Bean Family." (SOF, ¶79). Indeed, M. Bean admitted that he has not been "prevented" from going in the backyard at the Bean Property due to any of the matters alleged in the Second Counterclaim.  (SOF, ¶80).

Moreover, further illustrating the undisputedly meritless nature of the Second Counterclaim, Defendants have conceded that they have not sustained any damages whatsoever as a result of the foregoing "harassment" (which purported acts of "harassment", in any event, have been firmly disproven (*see, supra*)).  (SOF (Ex. B)).  Notably, in the Counterclaims, Defendants did not even *allege* any damages sustained by them specifically in connection with the Second Counterclaim and, instead, merely, vaguely refer to "money damages" in their Prayer for Relief with respect to all of the Counterclaims.  (SOF (Ex. B at p. 38)).  As established in discovery, the "money damages" which Defendants alleged in this Action – diminution of the market value of the Bean Property –was indisputably revealed to be without a shred of support and, in point of fact, Defendants explicitly testified that they  have not incurred any such damages. (*See, infra*, at pps. 28-30); (SOF, ¶¶129-132, 141, 145).   Thus, the Second Counterclaim is legally and factually baseless for this additional reason.

Accordingly, by virtue of the foregoing, summary judgment must be granted to Plaintiffs and against Defendants with respect to the Second Counterclaim.

**B.     The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment In Their Favor With Respect To The Third Counterclaim As Asserted By All Defendants**

It is well-settled that "[t]o establish a *prima facie* case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Hopkins v. O'Connor,* 282 Conn. 821, 838, 925 A.2d 1030 (Conn. 2007)(citation omitted); *Mercer v. Cosley,* 110 Conn. App. 283, 296-97, 955 A.2d 550, 561 (Conn. App. Ct. 2008). Moreover, a "plaintiff must prove that the...statements...caused pecuniary harm."  *Daley v. Aetna Life & Cas. Co.,* 249 Conn. 766, 795, 734 A.2d 112, 129 (Conn. 1999).[7]

It is fundamental that "[f]alsity is an essential element of a defamation claim". *Abdul-Salaam v. Lobo-Wadley,* 665 F.Supp.2d 96, 101 (D. Conn. 2009).  Further, the "substantial truth of a given statement may be proven by the plaintiff's testimony". *Jones v. Globe Intl., Inc.,* 3:94:CV014681995, 1995 WL 819177, at *6, *8 (D. Conn. Sept. 26, 1995); *Goodrich v. Waterbury Republican-American, Inc.,* 188 Conn. 107, 448 A.2d 1317, 1332-33 (Conn. 1982) (where "plaintiff conceded during direct examination that these statements were true...this concession creates an absolute bar to his claim of libel as to these statements.").

Further, in determining whether a statement is defamatory, the "threshold question is whether, as a matter of law, the statement is an expression of fact or mere opinion." *Grossman v. Computer Curriculum Corp.,* 131 F. Supp.2d 299, 312 (D. Conn. 2000).  "Under Connecticut law, each allegedly defamatory statement is a separate cause of action." *Dongguk Univ. v. Yale*

---

[7] Defendants have not pled a claim for defamation *per se*.  While they vaguely referred to "defamation *per se*" in their July 21, 2017 Opposition to Plaintiffs' Supplemental Motion to Dismiss Amended Counterclaims, the operative Counterclaims do not allege "defamation *per se*"; thus, in the event that Defendants belatedly rely upon such unpled claim in opposition to this Motion, they are foreclosed from doing so as a matter of law. (ECF Docket No. 62 at p. 13); *Stefanoni v. Darien Little League, Inc.,* 101 F. Supp.3d 160, 172 (D. Conn. 2015)(Bolden, J.).

*Univ.*, 873 F. Supp. 2d 460, 465 (D. Conn. 2012); *Cweklinsky v. Mobil Chem. Co.*, 267 Conn.

210, 217, 837 A.2d 759, 763-64 (Conn. 2004).

Applying the foregoing standards, the substantial evidence in this case firmly establishes

that <u>none</u> of the Subject Emails defamed any of the Defendants for the reasons set forth below.

1. **Defendants Have Unequivocally *Admitted* That Various Of The Subject Emails Do *Not* Defame Them, And Thus Summary Judgment Must Be Granted At The <u>Outset With Regard To *Each* Of Those Admitted Non-Defamatory Emails</u>**

In no uncertain terms, R. Bean admitted at his deposition that the 2/9/16 Email,[8] 3/6/16

Email, 3/7/16 Email, and Second 3/7/16 Email do not defame him; and E Black admitted that the

2/9/16 Email, 3/6/16 Email, 3/4/16 Email, Second 3/4/16 Email, 3/14/16 Email, 4/5/16 Email,

Second 4/5/16 Email, and 6/3/16 Email do not defame her.  (SOF, ¶¶82-83).

R. Bean and E. Black unequivocally conceded at their depositions that the 8/31/15 Email,

2/9/16 Email, 3/4/16 Email, Second 3/4/16 Email, 3/6/16 Email, Second 3/7/16 Email, 3/14/16

Email, and Second 4/5/16 Email *do **not** defame C. Bean and/or M. Bean*.  (SOF, ¶¶84-85).

Thus, Plaintiffs are entitled to summary judgment against  Defendants with respect to the

above-listed Subject Emails (collectively, the "<u>Admitted Non-Defamatory Emails</u>").

2. **M. Bean Admitted That His Only Purported Ground For Claiming That The <u>Subject Emails Defame Him Is By Imputation As A Member Of The "Bean Family"</u>**

M. Bean testified that his entire basis for asserting that he was defamed by the Subject

Emails is by "implication" and inference, due to his status as "part of the Bean family" and by

merely being "related to" any of the other Defendants identified in the Subject Emails.  (SOF,

¶¶90-91).  M. Bean's specious attempt to recover damages for defamation, indirectly and wholly

by tenuous imputation, is without legal basis and, in point of fact, flatly contravened by the

---

[8] The Subject Emails for which Plaintiffs seek summary judgment are listed in the Index to <u>Exhibit W</u> (attached to the SOF), and are referenced in this Motion by the definitions ascribed to them in the Index.

governing law. *Mara v. Otto*, CV065001188S, 2009 WL 3285075, at *2-3 (Conn. Super. Ct. Sept. 9, 2009); (SOF, ¶¶90-91).

Indeed, it is firmly entrenched under Connecticut law that "an action for defamation is **personal** to the party defamed and **may not be asserted by a third party**"; thus, "there can be no recovery for a libelous or slanderous statement relating to another, **including a relative** or a spouse even if the statement **indirectly** inflicts some injury upon the person seeking recovery." *Mara*, 2009 WL 3285075, at *2-3 ("[m]embers of a family, such as a spouse, may not sue for the defamation of other family members.")(emphasis added)(internal citations omitted); *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 356-57, 773 A.2d 906, 916 (Conn. 2001).

Thus, in that the applicable law decidedly precludes a defamation claim from being imputed to a family member based solely on familial status, summary judgment must be granted against M. Bean with respect to the Third Counterclaim, it its entirety, for this reason alone. *Mara*, 2009 WL 3285075, at *2-3; (SOF, ¶91).

3.   **Defendants Admittedly Have Not Suffered *Any* Monetary And/or Reputational Damages As A Result Of Any Of The Subject Emails And Thus Summary <u>Judgment Must Be Granted Against Each Of Them On This Basis Alone</u>**

Defendants each explicitly admitted at their respective depositions that *none* of them has incurred *any* monetary and/or reputational damages as a result of *any* of the Subject Emails, as required to prove defamation under Connecticut law. *Hopkins*, 282 Conn. at 838, 925 A.2d at 1042; *Daley*, 249 Conn. at 795, 734 A.2d at 129; (SOF, ¶¶86-89).

Accordingly, Defendants' undisputed failure and inability to establish this essential element of a defamation claim, on its own, requires that summary judgment be granted against all of the Defendants with respect to the Third Counterclaim, in its entirety. *Hopkins,* 282 Conn.

at 838, 925 A.2d at 1042; *Mercer,* 110 Conn. App. at 296-97, 955 A.2d at 561; *Pollack v. Eitelberg,* CV095011274S, 2012 WL 6634693, at *9, *13 (Conn. Super. Ct. Nov. 30, 2012)(where defendant "effectively admits that his claim for special damages is unsupported" "no issue of fact exists as to whether the defendant is entitled to such damages"); *Hauer v. ECHN Comm. Healthcare Foundation, Inc.,* CV094046119S, 2012 WL 798861, at *4 (Conn. Super. Ct. Feb. 16, 2012) ("plaintiff admits he cannot point to a specific harm which has befallen him due to the utterance of the allegedly defamatory statements."); *Marczeski v. Law,* 122 F. Supp.2d 315, 325-26 (D. Conn. 2000); (SOF, ¶¶86-89).

Thus, by virtue of Defendants' admitted lack of any damages whatsoever as a result of any of the Subject Emails, on this basis alone, summary judgment must be granted against *each* of the Defendants with respect to the Third Counterclaim *in its entirety.* (SOF, ¶¶86-89); *Id.*

**4.    Summary Judgment Must Be Granted Against Each Of The Defendants
With Respect To The Subject Emails Which Do Not "Identify" Him Or Her**

It is axiomatic that "an allegedly defamatory statement" must "identify" and "refer to" the person claiming to be defamed thereby, which is an "element crucial to prevailing on a common-law defamation claim." *QSP, Inc.,* 256 Conn. at 356, 773 A.2d at 916.

It is undisputed that (a) the 3/6/16 Email, 4/5/16 Email, and 6/3/16 Email, do not "identify" R. Bean and, thus, do not defame him; (b) the 8/31/15 Email, the 3/6/16 Email, 6/3/16 Email, and the 7/20/16 Email do not "identify" E. Black, and thus do not defame her; and (c) the 8/31/15 Email, 2/9/16 Email, 3/6/16 Email, 3/4/16 Email, Second 3/4/16 Email, 3/7/16 Email, Second 3/7/16 Email, the 4/5/16 Email, and 6/3/16 Email do not "identify" C. Bean and,

17

therefore, do not defame him; and <u>none</u> of the Subject Emails identifies M. Bean.[9]  (SOF, ¶¶90, 92, 112, 119; <u>Ex. W</u>); *QSP, Inc.*, 256 Conn. at 356, 773 A.2d at 916.

For this reason alone, summary judgment must be granted against Defendants, respectively, with regard to the above-listed Subject Emails. *Celotex*, 477 U.S. at 322-23.

5. **The Undisputed Facts Confirm That Certain Of The Subject Emails Are Comprised Of Non-Actionable *Opinion*, Rather Than *Fact*, And Thus Are Not Defamatory**

It is black-letter law that "[t]o be actionable, the defamatory statement must convey an objective ***fact*** rather than an ***opinion***." *Izzo v. Cyril-Scott Corp.*, No. 3:10-cv-1954, 2012 WL 13033133, at *4 (D. Conn. July 3, 2012)(emphasis added).  A "statement can be defined as factual if it relates to an event or state of affairs that existed in the ***past or present*** and is ***capable of being known***." *Goodrich*, 188 Conn. at 111, 448 A.2d at 1321 (emphasis added).

In contrast, "exaggeration, hyperbole, ridicule, sarcasm, stylistic touches and figurative expressions" are emblematic of non-actionable "opinion" and "cannot reasonably [be] interpreted as stating actual facts." *Colon v. Town of W. Hartford*, No. 3:00-cv-168, 2001 WL 45464, at *5 (D. Conn. Jan. 5, 2001); *Goodrich*, 188 Conn. at 121-24, 448 A.2d at 1326-27; *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) ("rhetorical hyperbole" or "imaginative expression" not actionable).  An "opinion…is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Goodrich*, 188 Conn. at 111, 448 A.2d at 1321; *Coleman v. S. Central Conn. Regional Water Auth.*, No. 3:06-cv-1515, 2009 WL 350597, at *5-6 (D. Conn. Feb. 12, 2009).

The documentary evidence, and Defendants' deposition testimony, confirm that the following Subject Emails are non-actionable statements of Plaintiffs' "opinions", rather than "objective facts":

---

[9] The Subject Emails listed herein do not include the Admitted Non-Defamatory Emails.  Moreover, as discussed, *supra,* <u>none</u> of the Subject Emails identifies M. Bean.

a.   **The 2/9/16 Email**

In the 2/9/16 Email, Mrs. Williams wrote that the Bean Property "ruin[ed] *the look* of Water Street" and that R. Bean was a "barbarian". (SOF, ¶¶98-99; Ex. W)(emphasis added).

Mrs. Williams' statement in the 2/9/16 Email that "*I could tell* he was going to ruin *the look* of Water Street" indisputably does not, on its face, "convey an objective fact" which is "capable of being known".   *Izzo*, 2012 WL 13033133, at *4; *Goodrich*, 188 Conn. at 121-22, 448 A.2d at 1326; *Brewer v. Town of W. Hartford*, No. 3:05-cv-849, 2007 WL 2904207, at *4-5 (D. Conn. Sept. 28, 2007)(statements prefaced with "[i]t appears" and "I believe" "set[] forth [defendant's] opinion")(emphasis added); (SOF, ¶¶98-99; Ex. W)(emphasis added).   Rather, Mrs. Williams' foregoing statement irrefutably, by its very terms, conveys her subjective, "personal comment" and opinion regarding the aesthetic "look" of the Bean Property. *Izzo*, 2012 WL 13033133, at *4; *Goodrich*, 188 Conn. at 111, 121, 448 A.2d at 1321, 1326; (SOF, ¶¶98-99; Ex. W).

Moreover, Mrs. Williams' reference to R. Bean as a "barbarian" is indisputably "rhetorical hyperbole", "exaggeration", and "imaginative expression" which "cannot reasonably [be] interpreted as stating actual facts" and/or be "take[n] *literally*." *Id.*; *Colon*, 2001 WL 45464, at *6 (emphasis added); *Milkovich*, 497 U.S. at 20; (SOF, ¶¶98-99; Ex. W).   Indeed, at his deposition, R. Bean firmly conceded that Mrs. Williams' statement – "he's a barbarian" – is not defamatory. (SOF, ¶99).

Further, Mrs. Williams' statements in the 2/9/16 Email are prefaced with "cautionary language" -- *i.e.*, "*I could tell*…" and "*I'm thinking*…" – which "make it clear [Mrs. Williams] is engaging in speculation or conjecture", and not stating an "objective fact". (SOF ¶98; Ex.

<u>W</u>)(emphasis added); *Colon*, 2001 WL 45464, at *5-6; *Goodrich*, 188 Conn. at 121, 448 A.2d at 1326.

**b.**   **The Second 3/4/16 Email**

In the Second 3/4/16 Email, Mrs. Williams wrote: "we have a new neighbor who ***told the world*** he'd build to see into our yard, and he's done it."   (SOF, ¶¶102-104; <u>Ex. W</u>)(emphasis added).   The foregoing is non-actionable "exaggeration" and "hyperbole", and "cannot reasonably [be] interpreted as stating actual facts", *i.e.*, that Mrs. Williams is "actual[ly]", "fact[ually]" stating that her "new neighbor" "told ***the world*** he'd build to see into" the Williams Property. (SOF, ¶¶102-104)(emphasis added); *Id.*; *Goodrich*, 188 Conn. at 121, 448 A.2d at 1326; *Milkovich*, 497 U.S. at 20.   Indeed, R. Bean admitted at his deposition that the above statement in the Second 3/4/16 Email is an "exaggeration." (SOF, ¶103).

**c.**   **The 5/26/16 Email**

The 5/26/16 Email (one of the Private Lives Emails (*see*, *infra*)) "strong[ly] signal[s]" that it contains Plaintiffs' personal observations and opinions. (SOF, ¶¶110-111; <u>Ex. W</u>); *Colon*, 2001 WL 45464, at *5; *Brewer*, 2007 WL 2904207, at *4-5. Specifically, in the 5/26/16 Email, Plaintiffs wrote that "...***we can see*** the house was designed for spying in our direction", and expressly discloses the specific facts upon which their opinion is based, *i.e.*, that "there are 19 south facing windows" and "far fewer windows that actually face the harbor." (SOF, <u>Ex. W</u>)(emphasis added); *Colon*, 2001 WL 45464, at *5; *Grossman*, 131 F. Supp.2d at 312 ("opinion...is a personal comment...that has some basis in fact"); *Johnson v. Cheesebrough-Pond's USA Co.*, 918 F. Supp. 543, 552 (D. Conn. 1996)("didn't fit in" is a "matter[] of opinion").

### d.   The Private Lives Emails

In 2016, Plaintiffs sent the Private Lives Emails as "a way of communicating with...friends and family about what's going on in [Plaintiffs'] lives." (SOF, ¶¶110-111).  Five (5) of the Subject Emails are Private Lives Emails (3/14/16 Email, 4/5/16 Email, 5/26/16 Email, 6/3/16 Email, 9/12/16 Email).  (SOF, ¶¶110-111).  By their very terms, the Private Lives Emails contain Plaintiffs' *private*, personal, subjective "observations and opinions" and, thus, indisputably do not contain "statements of fact."  (SOF, ¶¶110-111); *Colon*, 2001 WL 45464, at *5.

Specifically, the first line of the 4/5/16 Email conspicuously announces: "Reminder: Private Lives is a letter to our friends and family to keep all abreast our activities, *observations and opinions*", which "cautionary language is a strong signal to an average reader that he is reading the writer's *opinion*, not statements of fact."  (SOF, ¶¶110-111)(emphasis added); *Colon*, 2001 WL 45464, at *5 (statement "appears on the *page entitled 'Opinion & Comment'*"; "[b]y the very nature of this type of page, the average reader is influenced to read articles found thereon as containing opinions, not facts.")(emphases added).   Thus, the "very nature" of the Private Lives Emails confirms that their contents are "opinions, not facts."  *Id.*; (SOF, ¶¶110-111).

Accordingly, the undisputed evidence demonstrates that the Private Lives Emails are "merely expressions of opinion" and, thus, summary judgment should be granted in favor of Plaintiffs with respect to each of the Private Lives Emails. *Grossman*, 131 F. Supp.2d at 313.

### 6.   The Subject Emails Which Are Indisputably Not "False" Are Not Defamatory

A statement which is "substantially true" is not defamatory as a matter of law. *Gerrish v. Paul Hammick et. al.*, No. CV166070583S, 2018 WL 3060082, at *8 (Conn. Super. Ct. May 31,

2018)(granting summary   judgment where "the main charge, or gist…is true"; it is "not necessary for the defendant to prove the truth of every word of the libel"); *Pollack*, 2012 WL 6634693, at \*7-9.  As such, "[s]ummary judgment…is often granted…on the issue of substantial truth." *Mercer*, 110 Conn. App. at 303, 955 A.2d at 564.

### a.    The 8/31/15 Email, 3/4/16 Email, Second 3/7/16 Email, 4/5/16 Email, Second 4/5/16 Email, 5/26/16 Email

In or about April 2015, the Renovation Lawsuits were filed against Mr. and Mrs. Bean by several residents of Stonington, including Martina Durner. (SOF, ¶15).  On May 15, 2015, Ms. Durner e-mailed Mrs. Williams as follows: "What do you think about the plans for the new house of your neighbors? We have been trying to get them to lower their deck.  They would not budge because *they want to be able to look over your hedges*…"  (SOF, ¶93)(emphasis added).

The undisputed evidence confirms that, *after* Mrs. Williams received the Durner Email, in six (6) of the Subject Emails (8/31/15 Email, 3/4/16 Email, Second 3/7/16 Email, 4/5/16 Email, Second 4/5/16 Email, 5/26/16 Email)(the "Hedge Emails"), Mrs. Williams *truthfully* repeated and/or referenced the substance of the Durner Email, and *truthfully* stated that she had "heard" same from a third-party. (SOF, ¶¶93-96, 101, 106, 107; Ex. W).

Specifically, in the Hedge Emails, Mrs. Williams repeated the statement in the Durner Email as follows: (i) "Mr. Bean plans to build *high enough to see over our hedge*"; (ii) "He has also told neighbors that he rebuilt 28 Water *to a height so he could look into our garden*."; (iii) "…a new neighbor…told the world he'd build *to see into our yard*…"; (iv) "I remember when *Martina told me*. Bean had said he planned to *build so high he could see over our hedge into our garden*"; (v) "We heard…that our new neighbor bragged he was building it *high enough so that he could see over our hedge*"; (vi) "We were warned that Mr. Bean was telling people how he was going to build *a tall place which would overlook ours, including  our garden*…"; (vii)

"our new neighbor at 28 Water Street…was quoted as having said 'This house….is going to be so tall I will be ***able to look right into the Williams' garden***." (SOF, ¶¶93-96, 101; Ex. W)(all emphases added).

The Hedge Emails are each "true, either substantially or literally." (SOF, ¶¶93-96, 101; Ex. W); *Mercer*, 110 Conn. App. at 305, 955 A.2d at 565. First, it is undisputed that each of the Hedge Emails ***truthfully*** states the fact that Mrs. Williams is *repeating* information she "heard" from a third-party, specifically what "Martina [Durner] told" her. *Rogus v. Bayer Corp.*, No. 3:02-cv-1778, 2004 WL 1920989, at *12 (D. Conn. Aug. 25, 2004); (SOF, ¶¶93-96; Ex. W). Second, each of the Hedge Emails ***truthfully*** repeats *the substance* of the Durner Email. *Id.* (summary judgment granted where "the only statement by the company – an ***accurate reporting of another*** employee's complaint about [plaintiff]….was truthful")(emphasis added); (SOF, ¶¶93-96, 101; Ex. W).

As expressly admitted by R. Bean and E. Black at their respective depositions, the Durner Email is <u>not</u> defamatory and, thus, any repetition of the substance of the Durner Email is likewise legally "innocuous". (SOF, ¶¶94-96); *Id.* In that the record pointedly demonstrates that the Hedge Emails ***truthfully***, "accurately" "reference" the non-defamatory Durner Email, summary judgment must be granted in Plaintiffs' favor with respect to each of the Hedge Emails on this basis alone. (SOF, ¶96; Ex. W); *Rogus*, 2004 WL 1920989, at *12.

### b.   The 3/14/16 Email

The 3/14/16 Email states, in part:

> **"But the new owner of the house has remodeled it, enlarged and heightened it. (How he got the *out-of-code extensions through the local planning commission* is a mystery. Other neighbors sued to try to stop it, but were only moderately successful.)"**

(SOF, Ex. W)(emphasis added).

The evidence definitively confirms that the 3/14/16 Email is, entirely or "substantially true", which is an "absolute defense" to defamation under Connecticut law. *Mercer*, 110 Conn. App. at 304-05, 955 A.2d at 564-65; (SOF, ¶108).   The substantial record in this case verifies that the 3/14/16 Email is "substantially or literally" true in that, *inter alia*, Mr. and Mrs. Bean concededly did, in fact, receive a "variance" from the Stonington P&Z – defined by the Zoning Regulations as "[p]ermission to *depart from the literal requirements of the Zoning Regulations*" -- with respect to the Bean House. (SOF, ¶¶14, 108). R. Bean's testimony that the "variance" which was admittedly granted to Mr. and Mrs. Bean by the Stonington P&Z pertained to *the basement portion* of the Bean House is legally irrelevant in that, as a matter of law, "it is not necessary…to prove the truth of every word of the libel"; rather, the only pertinent inquiry is whether "the main charge, or gist, of the libel is true." *Id.*; (SOF, ¶108).

Thus, Mrs. Williams' statement in the 3/14/16 Email -- "[h]ow he got the *out-of-code extensions* through the local planning commission" (*i.e.*, the Stonington P&Z) "is a mystery" -- is not false. (SOF ¶108, Ex. W)(emphasis added); *Id.*; *Pollack*, 2012 WL 6634693, at *9 ("errors in terminology" do not obviate "substantial truth"); *Brewer*, 2007 WL 2904207, * 4 ("[w]hile not exactly the same, the admitted statement is materially similar").

c.     **The 7/20/16 Email**

The 7/20/16 Email states, in part:

> **"We hope to block some of the nineteen windows on the south side of 28 Water Street that face us, and make snooping more difficult…Our privacy became even more important when last week a young man from next door began taking photographs of us in our garden."**

(SOF ¶125; Ex. W)(emphasis added).

As discussed, *supra*, C. Bean admittedly photographed the Williams Property on at least July 8, 2016, July 19, 2016 and July 20, 2016, as established by the undisputed evidence in the record. (SOF, ¶¶43-64, 124). Thus, the statement in the 7/20/16 Email that "last week a young man from next door began ***taking photographs*** of us in our garden" is not false. (SOF (Ex. W))(emphasis added); *Mercer*, 110 Conn. App. at 304-05, 955 A.2d at 564-65; *Brewer*, 2007 WL 2904207, *5-6 (statement that plaintiff "produced a camera and began to take a series of photographs" was not false and, thus, not defamatory because plaintiff "admits that he photographed [the] car" and "took a picture of them").

Moreover, the 7/20/16 Email does <u>not</u> state, as alleged by Defendants in the Counterclaims, that "the Beans were snooping on the Williams". (SOF, <u>Ex. B</u> at ¶86; <u>Ex. W</u>). Rather, by its terms, the 7/20/16 Email states that Plaintiffs "planted" the Subject Trees "to...make snooping more difficult", which statement does not even reference or identify any of the Defendants and/or any conduct ("snooping" or otherwise) by any of the Defendants. (SOF <u>Ex. B</u> at ¶86; <u>Ex. W</u>); *Brewer*, 2007 WL 2904207, *5-6.

### d.     The 9/12/16 Email

The 9/12/16 Email was indisputably sent *after* the Action was commenced and (a) ***truthfully*** states that Plaintiffs filed the Action ("We have filed a lawsuit against our Stonington neighbors") and (b) accurately recites and describes the relief demanded by Plaintiffs in the Complaint ("We are seeking an injunction to prevent their eavesdropping, spying, and photographing us and our guests while we are in our property"). (SOF, ¶125); *Mercer*, 110 Conn. App. at 304-05, 955 A.2d at 564-65; *Brewer*, 2007 WL 2904207, *5-6.

By virtue of the foregoing arguments set forth in Section (B), *supra*, summary judgment should be granted in Plaintiffs' favor and against Defendants with respect to the Third Counterclaim.

**C.    The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment In Their Favor With Respect To The Fourth and Fifth Counterclaims**

The Fourth and Fifth Counterclaims purport to assert claims by all of the Defendants against Plaintiffs for, respectively, absolute private nuisance and negligent private nuisance. (SOF, Ex. B).  Pursuant to Connecticut law, a "private nuisance exists only where one is injured in relation to a right he enjoys by reason of his *ownership of an interest in land*" and requires a "cognizable injury" resulting from "actual use and enjoyment of...land".  *Ming Li v. Colonial BT, LLC*, No. 3:14-CV-999 (CSH), 2015 WL 5684060, at *4 (D. Conn. Sept. 28, 2015)(emphasis added); *Klausner v. Estate of Borre*, No. 146022590S, 2014 WL 7739232, at *4-5 (Conn. Super. Ct. Dec. 29, 2014).  Accordingly, "an owner or occupier" of land can recover for "injuries [sustained]...in the enjoyment of the property of which he is in possession" pursuant to a private nuisance claim.  *Ming Li*, 2015 WL 5684060, at *5 (recognizing that minor children physically "sharing possession" of land can assert private nuisance claims).

It is undisputed that C. Bean and M. Bean do not have any "ownership...interest" in and/or "possession" of the Bean Property, and admittedly do not "occup[y]" and/or reside at the Bean Property; rather, they both permanently reside in Boston, Massachusetts.  *Ming Li*, 2015 WL 5684060, at *4-5; (SOF, ¶¶2-4, 8, 11).  Thus, indisputably, C. Bean and M. Bean have not and *cannot* be "injured in relation to" any non-existent "interest" in the Bean Property.  *Id.*; *Couture v. Bd. Of Ed. Of Town of Plainfield*, 6 Conn. App. 309, 315, 505 A.2d 432, 435 (Conn. App. Ct. 1986)("[b]ecause he suffered no injury in relation to his ownership of an interest in

land, the plaintiff was precluded from recovering for private nuisance"); *Boyne v. Glastonbury,*

CV064024371, 2007 WL 2570335, at *3 (Conn. Super. Ct. Aug. 10, 2007).

Accordingly, Plaintiffs are entitled to summary judgment in their favor, and against C.

Bean and M. Bean, with respect to the Fourth and Fifth Counterclaims on this basis alone. *Id.;*

*Barr v. Harbor Park Assocs.*, No. CV920126722S, 1992 WL 394541, at *1 (Conn. Super. Ct.

Dec. 24, 1992); *Ridgefield Waterside Motors, LLC*, 2017 WL 3332744, at *3 (where defendants

admitted in pleading that their "principal place of residence is" not the subject property, they

cannot recover under private nuisance claim).

Summary judgment must be granted against all of the Defendants with respect to the

Fourth and Fifth Counterclaims on the further ground that none of the purported "harassing and

intimidating actions" (the "Alleged Nuisance Actions") upon which Defendants base the Fourth

and Fifth Counterclaims constitutes a "private nuisance" as a matter of law.  (SOF (Ex. B at

¶¶73-81, 127, 133); (Exs. N, T at Nos. 7, 10)); *Pestey v. Cushman*, 259 Conn. 345, 360, 788

A.2d 496, 507 (2002).

It is axiomatic that the sole "proper focus of a private nuisance claim for damages…is

whether a defendant's… *use of his or her property*, causes an unreasonable interference with the

plaintiff's *use and enjoyment of his or her property*."  *Pestey*, 259 Conn. at 360, 788 A.2d at

507 (relevant "inquiry is …whether the defendant's conduct unreasonably interfered with the

plaintiff's *use and enjoyment of his or her land* rather than whether the defendant's *conduct*

was *itself* unreasonable")(emphases added).

Irrefutably, none of the Alleged Nuisance Actions (a) constitutes a "*use of" the Williams

Property* by Plaintiffs and/or (b) "cause[d] an…*interference*" ("unreasonable" or otherwise)

with Defendants' "*use and enjoyment" of the Bean Property. Id.* (emphasis added); (SOF (Ex.

B at ¶¶73-81, 127, 133); (Exs. N, T at Nos. 7, 10)).  As such, none of the Alleged Nuisance

Actions is the "proper focus of a private nuisance claim".  *Id.*; *Villa v. Salvaggio*, No.

CV116022543S, 2014 WL 4290436, at *12-13 (Conn. Super. Ct. July 17, 2014)(nuisance must

be based on "conditions" and does "not arise from mere actions" such as "making gestures",

which are "***personal*** in nature, directed at ***the defendant***", and do "not connect to the manner in

which the defendant was ***using her property***")(emphases added); *Klausner*, 2014 WL 7739232,

at *5 ("private nuisance is something that physically impacts the ability to use and enjoy

property").

    Additionally, the undisputed record, and Defendants' own unambiguous admissions,

plainly confirm that they have not suffered any damages whatsoever as a result of the matters

alleged in the Fourth and Fifth Counterclaims.  (SOF, ¶¶129-132); *Fanion v. Radei*, No.

075001250S, 2009 WL 3740738, at *11-12 (Conn. Super. Ct. Oct. 16, 2009).

    Accordingly, summary judgment should be granted in Plaintiffs' favor, and against all of

the Defendants, with respect to the Fourth and Fifth Counterclaims.

**D.**    **The Undisputed Material Facts Demonstrate That Plaintiffs Are
Entitled To Summary Judgment In Their Favor And Against
R. Bean And E. Black With Respect To The Sixth Counterclaim**

    A violation of Conn. Gen. Stat. §52-570 (a "CGA §52-570 Claim") requires a showing,

*inter alia*, of (1) a "structure erected on the owner's…land"; (2) "malicious[ly]"; (3) "the

intention to injure the enjoyment of the adjacent landowner's land"; (4) "impairment of the value

of adjacent land because of the structure"; (5) "the structure [is] useless to the defendant"; and

(6) "enjoyment of the adjacent landowner's land in fact [was] impaired."  *Davis v. Property

Owners Assn.*, CV126006823S, 2016 WL 1099213, at *9-10 (Conn. Super. Ct. Feb. 24, 2016);

*Tchernotzkas v. Friar*, No. cv04833336S, 2005 WL 525657, at *13 (Conn. Super. Ct. Jan. 14,

2005)(structure not "maliciously erected" even though it "will interfere with the plaintiffs' view").

1.    **The Undisputed Facts Establish That The**
      **Subject Trees Were Not "Maliciously Erected"**

The gravamen of a CGA §52-570 Claim is a "***malicious*** structure". *Tchernotzkas*, 2005 WL 525657, at *13 (emphasis added).   A structure is "maliciously erected" only if it is completely "useless to the owner" and "serves, and is intended to serve, ***no purpose*** but to injure [a landowner] in the enjoyment of his land." *Jackson v. Lee*, 51 Conn. Supp. 399, 418, 996 A.2d 762, 775 (Conn. Super. Ct. 2009); *Whitlock v. Uhle*, 75 Conn. 423, 53 A. 891, 892 (Conn. 1903)(emphasis added).

As confirmed by E. Black's sworn deposition testimony, Defendants admittedly have "***nothing in writing***" whatsoever to substantiate their allegation that the Subject Trees were "erected….with malicious intent" and, instead, are admittedly relying solely on "conjecture" for same. (SOF, ¶¶142-143).  According, by virtue of E. Black's and R. Bean's undisputed lack of any proof that the Subject Trees were "maliciously erected", for this reason alone, summary judgment must be granted against E. Black and R. Bean with respect to the Sixth Counterclaim. *Id.*

In addition to Defendants' binding admissions regarding the wholesale absence of "malic[e]", additionally, the undisputed facts decidedly establish that the Subject Trees were not "maliciously erected" by Plaintiffs. *Jackson*, 51 Conn. Supp. at 418, 996 A.2d at 775; *Whitlock*, 75 Conn. 423, 53 A. at 892; (SOF, ¶¶134-147).  Specifically, the record confirms that the Subject Trees irrefutably "fulfilled a useful purpose" for Plaintiffs', *i.e.*, to protect their privacy while on the Williams Property.  (SOF, ¶133); *Davis*, 2016 WL 1099213, at *10; *Decarlo v. Priest*, No.

CV-000177-73, 2000 WL 486852, at *2 (Conn. Super. Ct. Apr. 10, 2000); *Bradford v.*

*Kimmerle*, No. 113078, 1999 WL 545356, at *4-5 (Conn. Super. Ct. July 19, 1999).

**2.    R. Bean And E. Black Admittedly Have *No* Proof Whatsoever That The "Value Of"
The Bean Property Was "Impair[ed]" "Because Of" The Subject Trees**

It is wholly undisputed that R. Bean and E. Black lack *any* evidence whatsoever that the

"value of" the Bean Property has been "impair[ed]" -- "because of" the Subject Trees or

otherwise – as confirmed by their sworn deposition admissions.  (SOF, ¶¶129-132, 141-145);

*Sachs v. Henwood*, No. CV980163554, 2001 WL 1132109, at *5 (Conn. Super. Ct. Aug. 17,

2001); *Palladino v. Pellini*, No. CV040199821S, 2005 WL 590090, at *4-5 (Conn. Super. Ct.

Feb. 2, 2005); *Tchernotzkas*, 2005 WL 525657, at *13.

Rather, Mr. and Mrs. Bean admittedly are relying solely on their subjective "belief" and

"assumption" that the Bean Property is "difficult to sell" and/or that the "fair market value of the

Bean Property has decreased", and concede that they do not have "any proof" whatsoever to

support such speculative "assumption."   (SOF, ¶¶129-130, 141-145); *CSL Silicones, Inc. v.

Midsun Gp., Inc.*, 301 F. Supp.3d 328, 375 (D. Conn. 2018)("surmise and conjecture cannot

create a genuine issue of fact"); *Sachs*, 2001 WL 1132109, at *5; *Palladino*, 2005 WL 590090, at

*4-5; *Tchernotzkas*, 2005 WL 525657, at *13 ("evidence that the erection of the structure *might*

impair the value of the adjacent land" insufficient without "evidence that the value will be

diminished").  Thus, summary judgment must be granted in Plaintiffs' favor for this reason

alone. *Id.*

Moreover, summary judgment with respect to the Sixth Counterclaim is warranted on the

additional, independent basis that R. Bean and E. Black admittedly have no proof whatsoever of

any "impairment of the value" of the Bean Property *"because of"* the Subject Trees. *Palladino*,

2005 WL 590090, at *3-4 (emphasis added); *Whitlock*, 75 Conn. 423, 53 A. at 892.  In point of

fact, E. Black testified that any "impairment" – albeit, based entirely on her "assumption" and

subjective "belief" -- is "because of" "publicity" regarding this Action and generalized

"information about the Williams" – not the Subject Trees. (SOF, ¶¶129-132, Ex. J); *Palladino*,

2005 WL 590090, at *3-4 (emphasis added).   Tellingly, E. Black admitted that any purported

inability "to sell the Bean Property" will remain only "while the Williams are still [Defendants']

neighbors to the south", thus conceding that the continued presence of the Subject Trees has no

impact on the "value" of the Bean Property.  (SOF, ¶¶129-132; Ex. J); *Palladino*, 2005 WL

590090, at *3-4.

Accordingly, for the foregoing reasons, summary judgment must be granted against R.

Bean and E. Black with respect to the Sixth Counterclaim.

**E.      The Undisputed Material Facts Demonstrate That Plaintiffs
         Are Entitled To Summary Judgment In Their Favor With
         <u>Respect To The Seventh Counterclaim</u>**

In the Seventh Counterclaim, R. Bean and E. Black seek "injunctive relief ordering the

Williams to remove the trees" and "imposing such conditions on the Williams as are required to

protect the Bean Family's use and enjoyment of the Bean Property and Mr. Bean and Ms.

Black's ability to sell the Bean Property in the future" (the "<u>Proposed Injunction</u>").  (SOF, <u>Ex. B</u>

at ¶¶147, 149).

Pursuant to CGA §52-480, an "injunction may be granted against the malicious erection"

of a "structure". *Palladino*, 2005 WL 590090, at *3-4.   As demonstrated, *supra*, the Subject

Trees were undeniably not "malicious[ly] erect[ed]". *Id.* Thus, summary judgment must be

granted against R. Bean and E. Black with respect to the Seventh Counterclaim on this basis

alone. *Id.*; *Grippo v. Middletown Bible Church*, No. CV0100095682S, 2004 WL 2284071, at

*6-7 (Conn. Super. Ct. Sept. 9, 2004).

Additionally, the undisputed facts demonstrate Mr. and Mrs. Bean's failure and inability to establish the onerous prerequisites to obtaining injunctive relief, *i.e.*, "immediate", "irreparable harm" in the absence of an injunction, "lack of an adequate remedy at law", and that the "balance of equities" weighs in favor of granting an injunction. (SOF, ¶¶27-29, 35,42-48, 55, 63, 72, 134-139); *Id.*; *Haggerty v. Parniewski,* 11 Conn.App. 37, 39, 525 A.2d 984, 986 (Conn. App. Ct. 1987). It is black-letter law that a "party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." *Id.* For the below reasons, R. Bean and E. Black have undeniably failed to satisfy their foregoing "crucial", stringent "burden". *Id.*

First, the substantial record is replete with explicit admissions by R. Bean and E. Black which clearly show the clear-cut lack of any "imminent", "substantial and irreparable harm" to R. Bean and E. Black without the Proposed Injunction. (SOF, ¶¶27-29, 35,42-48, 55, 63, 72, 134-139)); *Tchernotzkas*, 2005 WL 525657, at *15 (denying injunction to remove fence without a showing that "substantial and irreparable harm is imminent").

In point of fact, according to the substantial record, R. Bean and E. Black admitted that (a) they were expressly notified by Plaintiffs' gardener as early as April 2016 – *three (3) months prior* to the Subject Trees being planted – that Plaintiffs "intended to plant even *taller* trees along the parties' shared property line"; (b) in May 2016, Plaintiffs "planted *four (4) large trees* along the parties' shared property line"; (c) "in early June 2016", Plaintiffs' gardener "*again* contacted" Defendants "and advised that [Plaintiffs] were planning to plant *additional, taller trees* along the property line"; (d) throughout June and July 2016, Defendants had a "great deal of discussion" with Plaintiffs' gardener regarding Plaintiffs' planned installation of the Subject Trees; (e) on June 22, 2016, C. Bean listened in on private conversions occurring at the Williams

Property and "heard" that Plaintiffs were "talking about planting evergreens"; and (f) on July 19, 2016 and July 20, 2016 – three (3) entire months after first being advised regarding Plaintiffs' proposed planting -- "the initial four trees were removed and...replaced with" the Subject Trees. (SOF, ¶¶27-29, 35,42-48, 55, 63, 72, 134-139).

Notwithstanding, at no point whatsoever after first being notified in April 2016 regarding Plaintiffs' intended planting did Defendants object to and/or oppose same -- including by contacting Plaintiffs and/or filing a complaint or grievance with the Stonington P&Z -- until they filed the Counterclaims five (5) entire months later, solely in *response and reaction to* Plaintiffs filing the Complaint. (SOF, ¶¶139-140). Thus, the record decidedly negates any "imminent" "irreparable harm" to R. Bean and E. Black in the absence of the Proposed Injunction – presently and/or at any time since Plaintiffs' gardener first provided Defendants with express, advance warning that the "*tall*[]" Subject Trees would be installed *two years ago*. *Tchernotzkas*, 2005 WL 525657, at *15.

Second, as discussed, *supra*, **simultaneously during the planting of the Subject Trees** on July 19, 2016 and July 20, 2016, C. Bean repeatedly photographed the Subject Trees and sent same to R. Bean and E. Black via text messages on those dates. (SOF, ¶¶48-49, 53-55, 60-63). E. Black's dismissive response to one such photograph was a facially unconcerned "***WTF. Who cares***?" and R. Bean's response was "***That it***?" (SOF, ¶55)(emphasis added). As such, the undisputed facts clearly establish that R. Bean and E. Black will not be "irreparably harmed" without the Proposed Injunction. *Id.*; *Cunha v. Petela*, CV030284981S, 2005 WL 3663517, at *3-4 (Conn. App. Ct. Dec. 14, 2005)("no credible evidence [of]… irreparable damage[] or harm to the plaintiffs' property"; no "imminent danger" due to wall on adjacent property).

Third, in no uncertain terms, R. Bean and E. Black expressly concede that they have an "adequate remedy at law" with respect to the Subject Trees (assuming, *arguendo,* that the Subject Trees violate CGA §52-570) in the form of money damages calculated based on "the diminution of the value of the Bean Property." (SOF, Ex. B); *Cunha*, 2005 WL 3663517, at *3-4; *Haggerty,* 11 Conn.App. at 39, 525 A.2d at 986.

R. Bean's and E. Black's allegation in the Seventh Counterclaim that they have "no adequate remedy at law because the Williams will continue ***their behavior*** to the detriment of the Bean Family's rights and property unless ordered by the Court to cease ***said behavior***" is legally irrelevant in that the statutorily circumscribed scope of an injunction pursuant to CGA §52-480 is "against the malicious erection" of a "structure", not any purported "behavior." (SOF, Ex. B at ¶144); *Palladino*, 2005 WL 590090, at *3-4.   In point of fact, by virtue of the very fact that they seek an "injunction" with respect to ***Plaintiffs' "behavior"***, R. Bean and E. Black indisputably concede that their purported "damages" are not "because of" ***the Subject Trees***. (SOF, Ex. B at ¶144).

Fourth, indisputably, the undisputed facts clearly establish that the "balance of equities" mandates denial of the Proposed Injunction. *Keating v. Greene*, No. FSTCV074011089S, 2010 WL 2108481, at *11 (Conn. Super. Ct. Apr. 23, 2010)("equity does not favor requiring [defendant] to reverse her landscaping" which would "reverse hundreds of thousands of dollars of landscaping improvements which were made wholly on [defendant's] property"); *Sachs*, 2001 WL 1132109, at *5 ("an order directing the removal of the driveway….under the facts and circumstances of the case and a balancing of the equities and hardships, would be a wasteful and inappropriate one."); (SOF, ¶¶27-29, 35,42-48, 55, 63, 72, 134-139).

Likewise, the Proposed Injunction would require Plaintiffs to "reverse" their costly installation of the Subject Trees (i) *two (2) years after* Plaintiffs provided Defendants with ample prior notice regarding Plaintiffs' forthcoming planting of the Subject Trees, (ii) despite Defendants' admitted receipt of fulsome, ongoing, detailed updates from Plaintiffs' gardener in June and July 2016; and (iii) despite the undisputed, astonishing fact that C. Bean admittedly, closely monitored and photographed Plaintiffs' installation of the Subject Trees at R. Bean's and E. Black's express "request" for two (2) entire days on July 19, 2016 and July 20, 2016 and sent those photographs and updates to R. Bean and E. Black throughout those two (2) days. (SOF, ¶¶27-29, 35,42-48, 55, 63, 72, 134-139). Unquestionably, the "balance of equities" weighs emphatically against granting the Proposed Injunction, which would undeniably be "wasteful and inappropriate" in light of the overwhelming evidence. *Keating*, 2010 WL 2108481, at *11; *Sachs*, 2001 WL 1132109, at *5.

Accordingly, for the foregoing reasons, summary judgment must be granted against R. Bean and E. Black with respect to the Seventh Counterclaim.

**F.      The Undisputed Material Facts Demonstrate That Plaintiffs Are Entitled To Summary Judgment In Their Favor With <u>Respect To The Eighth Counterclaim</u>**

Under Connecticut law, a "person specifically and materially damaged by a violation of the zoning ordinances…may seek injunctive relief restraining such violation" "as an exception to the exhaustion of administrative remedies doctrine." *Karls v. Alexandra Realty Corp.*, 179 Conn. 390, 401-03, 426 A.2d 784, 789 (Conn. 1980); *Reichenbach v. Kraska Enterprises, LLC*, 105 Conn. App. 461, 468, 938 A.2d 1238, 1244 (Conn. App. Ct. 2008).

It is black-letter law that injunctive relief is an "extraordinary remedy"; as such, a party seeking an injunction with respect to a zoning violation "bears the burden of proving facts which

will establish irreparable harm as a result of that violation" and "that such harm is imminent" *Karls*, 179 Conn. at 401-03, 426 A.2d at 789; *Stewart v. Gothie*, No. CV990549831S, 2001 WL 686851, at *4 (Conn. Super. Ct. May 25, 2001).

As discussed, *supra*, the substantial record overwhelmingly confirms that R. Bean and E. Black have not, and cannot, establish any "imminent" or "irreparable" harm whatsoever as a result of the Subject Trees. *Id.*; *Karls*, 179 Conn. at 401-03, 426 A.2d at 789. Indeed, in light of R. Bean's and E. Black's admitted *"great deal* of discussion" with Plaintiffs' gardener regarding the planned Subject Trees for several months --- between April and July 2016 -- R. Bean and E. Black were privy to detailed, advance information regarding Plaintiffs' planned planting of the Subject Trees and, yet, never opposed or objected to same – either to Plaintiffs or by filing a formal complaint with the Stonington P&Z.[10]  (SOF, ¶¶27-29, 35,42-48, 55, 63, 72, 134-139). Further, in addition to the foregoing fulsome, advance information disclosed to Defendants throughout April, May, June, and July 2016, Defendants also obtained *additional* information regarding Plaintiffs' planned installation of the Subject Trees by virtue of C. Bean's eavesdropping and monitoring Plaintiffs and photographing the Williams Property, including, *inter alia*, on June 22, 2016, when he text messaged R. Bean and E. Black regarding the Williams Property to report: "some people back there today talking *about planting evergreens*" "think that's what I *heard*." (SOF, ¶¶42-63, 71-72)(emphasis added).

Thus, against the foregoing, abundantly documented backdrop, R. Bean and E. Black are irrefutably not entitled to an injunction requiring Plaintiffs to "remove the trees" and, thus,

---

[10] According to the Court's November 8, 2017 Order partially granting Plaintiffs' motion to dismiss the Counterclaims: "absent more factual detail regarding what the Beans knew, or should have known, and when, the Court is not well positioned to assess why the Beans allegedly failed to immediately raise their hackles at news of the Williams' plan to plant taller trees." (ECF No. 80). As demonstrated, *supra*, the evidence developed in discovery clearly established *"what* the Beans knew" – *i.e.*, specific information regarding the "**type**" and "**placement**" of the Subject Trees and *"when*" – at least as of April 2016 -- which information was regularly updated.  (SOF, ¶¶27-29, 35,42-48, 55, 63, 72, 134-139)(emphasis added).

summary judgment should be granted in favor of Plaintiffs and against R. Bean and E. Black with respect to the Eighth Counterclaim.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion for summary judgment should be granted in all respects, together with such other and further relief as this Court deems just and proper under the circumstances.

Dated:  July 20, 2018            LAW OFFICES OF DAVID C. BERG
       New York, New York

                                       _/s/ David C. Berg_
                                By: David C. Berg, Esq. (phv08546)
                                       Anne M. Christon, Esq. (phv08547)
                                425 Madison Avenue, 19th Floor
                                New York, New York 10017
                                Tel: (212) 829-0400
                                Fax: (212) 829-9398
                                Emails: davidberg@dberglaw.com
                                          annechriston@dberglaw.com

                                _Attorneys for Plaintiffs_
                                _(Admitted Pro Hac Vice)_

To:     James R. Nault, Esq.
         Robinson & Cole, LLP
         280 Trumbull Street
         Hartford, CT 06103
               - and –
         Michael Ryan, Esq.
         Michael Barbarula, Esq.
         Ryan, Ryan Deluca LLP
         707 Summer Street
         Stamford, CT 06901
         _Attorneys for Defendants_