# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DAVE WILLIAMS AND** | : | |
| **REBA WILLIAMS** | : | |
| | : | CIVIL ACTION |
| **Plaintiffs/Counterclaim** | : | |
| **Defendants,** | : | NO.: 3:16-cv-01633-VAB |
| **v.** | : | |
| | : | |
| **RANDALL BEAN, ELIZABETH** | : | **JURY TRIAL DEMANDED** |
| **BLACK BEAN, CHRISTOPHER BEAN,** | : | |
| **AND MATTHEW BEAN,** | : | |
| | : | July 25, 2018 |
| **Defendants/Counterclaim** | : | |
| **Plaintiffs.** | : | |

**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS'
ANSWER AND SECOND AMENDED COUNTERCLAIMS
TO PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' COMPLAINT**

The Defendants and Counterclaim Plaintiffs, Randall Bean ("Mr. Bean"), Elizabeth

Black ("Ms. Black"),[1] Christopher Bean, and Matthew Bean (collectively, the "Defendants"

and/or "Bean Family"), by and through their undersigned attorneys, hereby amend their asserted

counterclaims[2] in response to the Plaintiffs and Counterclaim Defendants Dave and Reba

Williams' (collectively, the "Plaintiffs" and/or "the Williams") complaint, dated August 31,

2016, as follows:

1.      The Defendants lack sufficient information upon which to form a belief as to the truth of

the allegations contained in paragraph 1.

---

[1]      The Williams have mistakenly captioned Elizabeth Black's name in this action as Elizabeth Black Bean.
Elizabeth Black's legal name is Elizabeth Black, not Elizabeth Black Bean, and the Defendants accordingly refer
herein to Elizabeth Black or Ms. Black.
[2]      Defendants have only amended their Counterclaims.  No amendments or changes have been made to the
Answer.

2.      The Defendants admit that Mr. Bean and Ms. Black own a vacation home at 28 Water Street, Stonington, CT 06378.  The Defendants' permanent residences and domiciles are all at 189 Marlborough Street, Boston, Massachusetts 02116.

3.      The Defendants admit that Mr. Bean and Ms. Black are married and that Christopher Bean and Matthew Bean are Mr. Bean and Ms. Black's sons.

4.      The Defendants lack sufficient information upon which to form a belief as to the truth of the allegations contained in paragraph 4.

5.      The Defendants lack sufficient information upon which to form a belief as to the truth of the allegations contained in paragraph 5.

6.      The Defendants Mr. Bean and Ms. Black admit that they own a vacation home at 28 Water Street, but deny the remaining allegations of paragraph 6.

7.      The Defendants Mr. Bean and Ms. Black admit that they renovated their 28 Water Street residence, which renovations were unanimously approved 5-0 by the Town of Stonington Planning and Zoning Commission ("Stonington P&Z").  Mr. Bean and Ms. Black also admit that two households opposed their renovation, and the opposing parties' views were heard and considered by the Stonington P&Z in unanimously approving the addition.  Otherwise, denied.

8.      Denied.

9.      Denied.

10.     The Defendants lack sufficient information upon which to form a belief as to the truth of the allegations contained in paragraph 10.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Denied.

15.     The Defendants deny that they have conducted any "Surveillance Activities" and therefore deny that they have ever asked for or received "Williams' authorization, approval, or consent to conduct any" such "Surveillance Activities."

16.     Denied.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.

28.    Denied.

29.    Denied.

30.    The Defendants admit that the Williams installed thirty (30) trees that are at least ten (10) feet tall and installed two (2) large trellises on the Plaintiffs' 24 Water Street property near the property line between the Williams' and Mr. Bean and Ms. Black's properties, but deny the remaining allegations of paragraph 30.

31.    Denied.

## **<u>COUNT ONE</u>**

32.    The Defendants' responses to Paragraphs 1 through 31 are hereby incorporated and made the Defendants' responses to Paragraphs 1 through 31 of Count One, as if fully set forth herein.

33.    Denied.

34.    Denied.

35.    Denied.

36.    Denied.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    Denied.

46.    Denied.

## **COUNT TWO**

47.    The Defendants' responses to Paragraphs 1 through 46 of Count One are hereby

incorporated and made the Defendants' responses to Paragraphs 1 through 46 of Count Two, as

if fully set forth herein.

48.    Denied.

2c26482c6ec29502

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

## **COUNT THREE**

54.     The Defendants' responses to Paragraphs 1 through 53 of Count Two are hereby incorporated and made the Defendants' responses to Paragraphs 1 through 53 of Count Three, as if fully set forth herein.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

## COUNT FOUR

62.     The Defendants' responses to Paragraphs 1 through 61 of Count Three are hereby incorporated and made the Defendants' responses to Paragraphs 1 through 61 of Count Four, as if fully set forth herein.

63.     Denied.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

70.     Denied.

71.     Denied.

## COUNT FIVE

72.     The Defendants' responses to Paragraphs 1 through 71 of Count Four are hereby incorporated and made the Defendants' responses to Paragraphs 1 through 71 of Count Five, as if fully set forth herein.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

## COUNT SIX

80.     The Defendants' responses to Paragraphs 1 through 79 of Count Five are hereby incorporated and made the Defendants' responses to Paragraphs 1 through 79 of Count Six, as if fully set forth herein.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

## PRAYER FOR RELIEF

The Defendants deny that the Williams are entitled to any relief sought in the prayer for relief in the Complaint.  The Williams are not entitled to recover compensatory or punitive damages, costs, attorneys' fees, or any other kind of monetary relief.  The Williams are also not entitled to injunctive relief or any other type of recovery from the Defendants.  The Williams' prayer for relief should be denied in its entirety and with prejudice, and the Williams should take nothing.

## AFFIRMATIVE DEFENSES

The Defendants assert the following affirmative defenses and reserve the right to amend their Answer as additional information becomes available.

### First Affirmative Defense

1.      The Complaint fails to state a valid claim upon which any relief can be granted.

### Second Affirmative Defense

2.      Count Six of the Complaint fails as a matter of law because it implies that it is seeking an injunction, but an injunction is a remedy, not a cause of action.

### Third Affirmative Defense

3.      The Williams' claims are barred by the equitable doctrines of unclean hands, estoppel, laches, and waiver.

**Fourth Affirmative Defense**

4.      The Williams are not entitled to injunctive relief because any injury to the Williams is

neither immediate nor irreparable and the Williams have an adequate remedy at law.

**Fifth Affirmative Defense**

5.      The Defendants reserve all affirmative defenses under Rule 8(c) of the Federal Rules of

Civil Procedure and any other defense at law or in equity, that may now or in the future be

available based on discovery or any other factual investigation concerning this case.

**COUNTERCLAIMS**

      The Defendants and Counterclaim Plaintiffs, Randall Bean, Elizabeth Black, Matthew

Bean and Christopher Bean, for their counterclaims against the Plaintiffs and Counterclaim

Defendants, allege as follows:

**NATURE OF THE ACTION**

1.      Mr. Bean and Ms. Black purchased a vacation home in the densely populated Stonington

Borough to enjoy Stonington's uninterrupted water views and sense of community with their two

children, Matthew and Christopher (collectively the "Bean Family"), who are young adults just

starting out in their respective careers.

2.      The home, which had been largely unoccupied for many years, had fallen into disrepair

and required extensive renovations, which the Bean Family undertook with an eye towards

creating a serene escape for their busy family.

3.      Before even moving in, however, the Bean Family was subject to harassment and intimidated by the their next door neighbors, the Williams, who made thinly veiled threats of litigation as early as March 2016.

4.      Now, the Williams have carried through on that threat with the filing of their baseless lawsuit, incredibly claiming that members of the Bean Family, who are well-respected members of  the community, are "illegally surveilling" them.

5.      In addition to having to expend time and energy to defend these specious accusations in court, the members of the Bean Family must also defend their personal and professional reputations from the separate defamatory statements the Williams have made about them to other residents of Stonington Borough.

6.      The Williams appear to have singled out Christopher Bean, the youngest member of the Bean Family, as the target of their bizarre campaign.

7.      Neither Christopher nor any other member of the Bean Family has ever even spoken with Mr. or Ms. Williams.

8.      The Bean Family has no idea what they have done to provoke these malicious accusations.

9.      The Bean Family would like to be left alone to enjoy the home that they have so lovingly restored.

10.     However, the homes in Stonington Borough are located in close proximity to each other. The Bean Family's home and the Williams' property are no exception.

11.     In light of the Williams' actions, including the filing of the instant lawsuit, their dissemination of defamatory statements, and their ongoing claims of "surveillance," the Bean Family does not feel comfortable going into their yard or onto their deck because the Williams seem to equate their mere outdoor presence with surveillance.

12.     Although the Williams have run into court, it is the members of the Bean Family who are the victims in this curious situation.  Accordingly, the Bean Family asserts the following counterclaims to protect their right to enjoy their home without threat of harassment.

## THE PARTIES

13.     The Bean Family, Randall Bean, Elizabeth Black, Christopher Bean, and Matthew Bean, have their permanent address at 189 Marlborough Street, Boston, Massachusetts 02116.  Each member of the Bean Family is domiciled in Massachusetts.

14.     Upon information and belief, Plaintiffs/Counterclaim Defendants David Williams and Reba Williams are husband and wife who reside at 135 Zaccheus Mead Lane, Greenwich, Connecticut 06831, and who own and maintain a residence at 24 Water Street, Stonington, Connecticut 06378 and 29 Water Street, Stonington, Connecticut 06378.  Upon information and belief, the Williams are domiciled in Connecticut or a state other than Massachusetts.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the Plaintiffs and Defendants are citizens of different states.  *See* Defendants' Notice of Removal and Compliance with Standing Order on Removed Cases at 2-7, D.I. 1 (Sept. 29, 2016) for a discussion of why these requirements for diversity subject matter jurisdiction are met in this case.

16.     Venue for this action is permissible based upon this judicial district being one in which a substantial part of the alleged events giving rise to the Plaintiffs' and the Counterclaim Plaintiffs' claims occurred under 28 U.S.C. §§ 1391(b)(2).

## BACKGROUND

### The Bean Family

17.     Mr. Bean and Ms. Black are husband and wife.  Although they work and reside in Boston, they have been members of the Stonington community since 2007.

18.     Mr. Bean is the founder and chief executive officer of a management consulting firm headquartered in Boston.  Mr. Bean has also been a leader in the Stonington community, serving on several community boards.

19.     Ms. Black has enjoyed a long career in public health.  She is the former chief administrative officer for anesthesia, critical care and pain medicine at a Boston hospital.

20.     Matthew Bean is twenty-five (25) years old.  He is working as an investment analyst in Boston and was only able to visit Stonington occasionally over the past summer.

21.     Christopher Bean is twenty-two (22) years old.  He graduated from Washington University in St. Louis in May 2016.  He spent the summer working part-time at a local restaurant while seeking full time employment in his chosen field.

**The Property at 28 Water Street**

22.     In October 2014, Mr. Bean and Ms. Black purchased a home at 28 Water Street (the "Bean Property").  The existing house on the Bean Property was built circa 1870 and was in need of significant repair.

23.     The defining characteristic of the Bean Property is its uninterrupted views of Montauk Point, Fishers Island, and the Fishers Island Sound (hereinafter "Water Views").

24.     The Water Views, and the waterfront location, were the primary reasons Mr. Bean and Ms. Black decided to purchase the Bean Property.

25.     Prior to the purchase, Mr. Bean and Ms. Black met with architects to determine what renovations could be made to the existing structure on the property under the Town of Stonington Planning and Zoning Commission ("Stonington P&Z") Guidelines.

26.     The resulting renovation design (hereinafter "Design Plan") was developed by an experienced architect with predominantly south and southwest facing windows to take advantage of south facing solar gain, the natural light, and the Water Views.

27.     In addition to emphasizing the Water Views, the architect placed as few windows as feasible on the north side of the home because of the absence of any solar gain or natural light.

28.    Although it added windows and changed the usage of certain spaces, the Design Plan did not change the footprint or height of the existing home on the Bean Property.

29.    Prior to submitting their plan to the Stonington P&Z, Mr. Bean and Ms. Black requested that the listing real estate agents for the Bean Property inquire as to whether the Williams, who owned the home next door as well as the home directly across the street, had any objection to the Design Plan.

30.    The real estate agents reported that the Williams did not object to the plans.

31.    Working with the Stonington P&Z officer, Mr. Bean and Ms. Black submitted their Design Plan for approval in March 2015.

32.    The Design Plan received overwhelming community support, with approximately 50 neighbors sending letters of support to Stonington P&Z or attending the plan review hearing in support.

33.    The Design Plan was also opposed by two households.  The Williams were not among the objectors.

34.    Despite not objecting to the Design Plan, in an August 31, 2015 email Reba Williams stated to Lynn Young that "Mr. Bean plans to build high enough to see over our hedge.  If he does and peers into our privacy, we'll know he's a peeping tom."

35.    The Design Plan was approved by Stonington P&Z unanimously.

36.     Following approval of the Design Plan, the opponents of the plan, Martina Durner and

Larry Alstiel of 31 Water Street, along with Paul Koushouris of 33 Water Street, filed two law

suits against the Town of Stonington, Stonington Planning & Zoning, Stonington Zoning Board

of Appeals, and the Bean Family.

37.     On information and belief, Ms. Durner and Mr. Alstiel contacted multiple neighbors,

including the Williams, in an effort to build support for the opposition.

38.      In November 2015, the Bean Family agreed to a stipulated settlement with the objectors

not to make changes to the Design Plan for a period of ten (10) years.

39.     Ms. Durner and Mr. Alstiel are the principal witnesses cited in the Williams' complaint.

40.     Despite not objecting to the Design Plan, Reba Williams, in a February 9, 2016 email to

Betty Richards, stated that the renovated Bean Property "ruin[ed] the look of Water Street," and

that Mr. Bean was a "barbarian."

**The Dock Permit for 28 Water Street**

41.     In August 2015, Mr. Bean and Ms. Black filed an application for a dock permit to build a

short dock from the Bean Property.  Proper notification was sent to immediate neighbors,

including the Williams.

42.     Mr. Williams opposed the dock permit application, despite the fact that the Williams'

property also includes a dock.

43.     The Williams' letter of opposition stated, "[w]hen we bought our home, 24 Water Street, six years ago, we were informed that no more docks would be permitted in the Commons to the Point area."

44.     Despite opposition from Mr. Williams, the Stonington Harbor Marine Commission approved the dock permit application unanimously, 10-0, one month later.

45.     Mr. Bean and Ms. Black then made the necessary dock permit application to the State of Connecticut Department of Energy and Environmental Protection ("DEEP").  On February 29, 2016, DEEP granted tentative approval for the dock permit.

46.     In a March 6, 2016 email to Betty Richards, Dave Williams stated "Reba wants me to send this on.  For her, the dock does it. Can't live with that and all else next door.  We'll have to move."

47.     It was around this time that David and Reba Williams began to harass Mr. Bean and Ms. Black and their children.

**David and Reba Williams**

48.     The Williams own two houses in Stonington Borough immediately surrounding the Bean Property.

49.     The first house, located at 24 Water Street, is immediately next door to the Bean Property.  The second house, located at 29 Water Street, is located directly across the street from the Bean Property.  (24 Water Street and 29 Water Street are hereinafter referred to collectively as the "Williams Property").

17

50.     The Williams have a history of antagonistic relations with the Stonington community as detailed in an article published by The New London Day in March 2011.

51.     Indeed, this is not the first time the Williams have sued their next door neighbors.

52.     In 2009, the Williams filed two separate lawsuits in Connecticut Superior Court against the previous owners of the Bean Property, alleging the existence of a property line dispute.

53.     On information and belief, the previous owners of the Bean Property sold it to Mr. Bean and Ms. Black, well below their initial asking price, in part, because of the Williams' harassing actions.

**The Williams Threaten the Bean Family**

54.     Although they had never even met the Williams, less than a week after the DEEP's tentative approval of the Bean Family's dock application in February 2016, Mr. Bean and Ms. Black became aware that the Williams had circulated a disparaging email about Mr. Bean and Ms. Black to numerous residents of the Stonington community.

55.     The email, dated March 4, 2016, accused Mr. Bean and Ms. Black of stating that they were "friends" with the Williams and further claimed that Mr. Bean and Ms. Black had told an

18

unidentified third party that Mr. Bean and Ms. Black designed the Bean Property so that they could look into the Williams' garden.[3]

56.     Mr. Bean and Ms. Black were unsettled by the dissemination of these strange and false accusations from people they had never met.

57.     Upon learning of the email, Ms. Black tried to make peace with the Williams by sending an email to Mr. Williams.  The email stated, in relevant part:

> To clarify, we have never indicated in writing or conversation that we are 'friends' with you or your wife . . . . We purchased the property at 28 Water St. in October 2014 because we wanted water front property.  We have never, in writing or conversation, indicated that the reason for this purchase was so that we could look at your gardens.  I can assure you that we have absolutely no intention of interfering with your privacy and look forward to being cordial and respectful neighbors.

*Email from Elizabeth Black to David Williams,* dated March 5, 2016 at 12:29 p.m.

58.     In discussing this email with Betty Richards in a March 7, 2016 email, Reba Williams stated that just as in prior years when they had been "made miserable" by a previous owner of 28 Water Street, whom Williams called "Horrible Hobbs," it was happening again and that Ms. Black was "lying" in her March 5 email.

59.     Reba Williams also, on March 7, 2016, in an email to Larry Alstiel, stated that "[Mr.] Bean had said he planned to build so high he could see over our hedge into our garden."

---

[3]     A second disparaging email was also sent from Reba Williams to a person named "Josie" on March 4, 2016, which stated that Mr. Bean "told the world he'd build to see into our yard, and he's done it."

60.     On March 7, 2016, Ms. Williams responded to Ms. Black's March 5 email by threatening

unspecified legal action.  The email stated, in relevant part:

> I have no interest in the past. All that I care about is recent behavior of your
> husband.  You imply that I have misstated facts about him.  I have *huge* amounts
> of backup from people who detest you both.  Should I have to go to court for
> anything—they have all offered support.   At one time I thought you were
> innocent, and didn't know anything about your husband's behavior.  I now know
> better.

*Email from Reba Williams to Elizabeth Black,* dated March 7, 2016 at 4:50 p.m. (emphasis in

original).

61.     Mr. Bean and Ms. Black were baffled and alarmed by Ms. Williams' response.

62.     No member of the Bean Family has any knowledge of what "behavior" Ms. Williams is

referring to in her March 7, 2016 email.

63.     Disconcerted by the Williams' implication that Mr. Bean was involved in something

untoward and the thinly veiled threat of future legal action, Mr. Bean contacted the Stonington

Police Department to express his concern.

64.     On March 8, 2016, in an effort to mollify the Williams, Mr. Bean sent an email to the

Williams, which stated:

> Dear Mr. and Mrs. Williams:
>
> Pardon this brief note of introduction.
>
> First, I want to express that we look forward to being your neighbors on Water
> Street and hope to have a long and amicable acquaintance.  Please let me know if
> there is anything that we can do to be of support to you or assistance.  We have
> two sons who are always willing to help out.

20

Second, it has been brought to our attention that you may have some questions about our plans.  Please let me know any questions you may have, and I will be pleased to respond.

Third, it has also been brought to our attention that a small, but vociferous, handful of neighbors have continued to relate misinformation about the planning and zoning approval process, and about us too.  Please know that this information is untrue, and personally motivated.

The plans for 28 Water Street were vetted and approved unanimously by town officials, and approximately 100 residents provided testimony and support in favor of the plans.  Only a handful spoke in opposition.

I want to make abundantly clear that at no stage did we ever make any comments with regard to you, nor would we have any reason to.  This information is simply false, unfortunate, and profoundly disappointing to hear.

We hope to be cordial neighbors.  We would be delighted to welcome you for drinks, and to share common experiences as travelers and as an author.  We possess only goodwill with regard to you.  We sincerely hope that you will come to feel the same way.

Warm regards,
Randy Bean and Family

*Email from Randall Bean to David William,* dated March 8, 2016 at 11:47 a.m.

65.     Just over an hour later, Ms. Williams responded stating, in part, that because of the Bean

Family, the Williams were allegedly being forced to move out of Stonington:

As a consequence of your constantly forcing yourself in our lives we are leaving Stonington.  We do not want to live next door to you.  Do not contact us again. You will always be the person who has forced me away from a house and garden I love.
RWW

*Email from Reba Williams to Randall Bean,* dated March 8, 2016 at 1:04 p.m.

21

66.    The Bean Family does not have any knowledge of the basis of the allegations in Ms. Williams' March 8 email or what prompted her response.

67.    In a March 14, 2016 email to an email group called "Private Lives," Reba Williams accused Mr. Bean of improperly obtaining approval for the renovations to the Bean Property, renovations that were, according to Reba Williams, "out-of-code."

**The Williams' Subsequent Harassment**

68.    Less than three weeks later, on March 28, 2016, Mr. Bean and Ms. Black received formal DEEP approval for a dock and commenced preparing to construct the same.

69.    The Williams appealed to the DEEP.  This appeal was denied.

70.    Thereafter, on April 5, 2106, the Williams sent another communication, this time a letter, to members of the Stonington community that disparaged the Bean Family's home, suggested that the Bean Family were "peeping toms," and again contained the untrue assertion that Mr. Bean claimed that the Bean Property had been specifically designed to see into the Williams' yard.[4]

71.    The Bean Family did not learn of this letter until after the Williams filed the instant lawsuit.

---

[4]        Reba Williams sent a second email on April 5, 2016 to Spike Lobdell, which stated that "Mr. Bean was telling people how he was going to build a tall place which would overlook ours, including our garden—ruining our privacy.  He did what he said he would, . . . ."

72.     However, around the same time, in or around April 2016, Mr. Bean and Ms. Black learned that Mr. Williams had requested a copy of their Design Plan from the Stonington P&Z.

73.     Upon learning of this, and in light of Ms. Williams' threat of legal action the month earlier, Mr. Bean and Ms. Black met with the contractors working on the Bean Property and expressly instructed them to be extremely sensitive to the Williams and the Williams Properties.

74.     On May 26, 2016, Reba Williams stated in an email to the "Private Lives" group, that Mr. Bean had said that "This house under renovation is going to be so tall I will be able to look right into the Williams' garden."  She also stated that the renovations to the Bean Property were "designed for spying" on the Williams, and again suggested that the members of the Bean Family are peeping toms.

75.     On May 28, 2016, after Susan Kinsolving had responded to Reba Williams' May 26 email by saying that the Williams should "shin[e] very bright lights back at them [which] might force them to lower blinds and pull curtains," Reba Williams said "we'll have to figure out how to do it."

76.     On June 3, 2016, in yet another email to the Private Lives group and before the Bean Family began moving into the Bean Property, Reba Williams stated that "several people" were "staring" and "looking at us" from the Bean Property.

77.     On June 5, 2016, Mr. Bean and Ms. Black began moving into the Bean Property for the summer months.

78.     On that same day, while the Bean Family moved their belongings, Ms. Williams stood at the side entrance of her property, which is very close to the Bean Property, holding an iPad or other digital recording device and pointed and gestured wildly.  Mr. Williams stood next to her. Neither spoke to Mr. Bean or Ms. Black.  On information and belief, this was intended to cause Mr. Bean and Ms. Black to turn and look in her direction.

79.     Several days later, Mr. Williams stood directly in front of the Bean Property on the sidewalk, obstructing the entrance to the Bean Property from the street.  On information and belief, this action was designed to provoke a response from Mr. Bean or Ms. Black.

80.     Since these initial incidents, the Williams have continued to harass Mr. Bean, Ms. Black and their children when they visit the Bean Property.

81.     On over ten (10) occasions over the summer of 2016, the Williams have positioned themselves close to the Bean Property, making inflammatory gestures, or stood directly in front of the Bean Property.

82.     In light of Ms. Williams' threat of legal action, the Bean Family felt intimidated, threatened and bullied by the Williams' pattern of behavior.

83.     These and other actions by the Williams have made the Bean Family uncomfortable moving about their own home when the Williams are in Stonington.

84.     As a further result of the Williams' harassment, the Bean Family is reluctant to go outside when the Williams are in Stonington and avoid inviting friends and family to visit for fear that they will be subjected to the Williams' harassment.

85.    On July 18, 2016, in an email to Annette Blaugrund, Reba Williams stated that the Williams were being "spied upon" by the Bean Family.

86.    On July 20, 2016, Dave Williams sent four identical emails to five persons, Tom Hausman and Al Razzano, Heidi Reavis, Betty Richards, and Mary Fitzgibbons, falsely stating that the Beans were snooping on the Williams and that "last week a young man from next door began taking photographs of us in our garden."


**The Wall of Trees**

87.    In addition to their abusive behavior, the Williams also have planted a row of high trees designed to eliminate the Water Views that enticed Mr. Bean and Ms. Black to purchase the Bean Property in the first place.

88.    At the time Mr. Bean and Ms. Black purchased the Bean Property, the Williams' Property was already protected by a mature hedge, approximately six feet tall.

89.    At some point in April 2016, a gardener who represented that he was employed by the Williams, telephoned Mr. Bean at his office and advised him that the Williams intended to plant even taller trees along the parties' shared property line.

90.    Thereafter, in May 2016, the Williams planted four (4) large trees along the parties' shared property line, behind the existing hedge.

91.     On information and belief, these trees were in violation of the Stonington P&Z
Guidelines.

92.     Subsequently, in early June 2016, the Williams' gardener again contacted the Bean
Family and advised that the Williams were planning to plant additional, taller trees along the
property line.

93.     Thereafter, the initial four trees were removed and, on or about July 20, 2016, replaced
with thirty (30) taller trees, that are approximately fourteen (14) feet, in height along the
boundary between the Williams' Property and the Bean Property ("tree wall").

94.     On information and belief, these trees are in violation of Stonington P&Z Guidelines.

95.     This tree wall blocks large portions of the Bean Property's Water Views.

96.     On information and belief, this species of tree will likely grow to thirty (30) feet or more
in height, which would be sufficient to eliminate the Bean Family's ability to enjoy the Water
View from any floor of the Bean Property.

97.     This tree wall has and will continue to deprive the Bean Family of their enjoyment of
their Property and has impacted the Bean Property's value and marketability.

**The Williams' Threats To Christopher Bean**

98.     On September 12, 2016, Dave Williams sent an email to the Private Lives group which
informed the group that they had sued the Bean Family, including Mr. Bean and Ms. Black's two
sons, and were "seeking an injunction to prevent their eavesdropping, spying, and photographing

26

us and our guests while we are in our property."  Finally, the email mentioned that the Williams

had sued the previous owners of the Bean Property.

99.      The statements concerning the Beans in the September 12, 2016 email are false.

100.     On or around October 7, 2016, another letter was received by certain residents of the

Stonington community ("October 2016 Letter").[5]

101.     This letter appears to have been written by Mr. or Ms. Williams.

102.     The October 2016 Letter contained additional disparaging statements about the Bean

Family.

103.     The statements contained in the October 2016 letter related to the Bean Family are false.

104.     The false statements contained in the October 2016 letter are injurious, particularly to

Christopher Bean who is in the process of launching his career.

105.     Specifically, the October 2016 letter falsely claimed that Christopher Bean was

trespassing on the Williams' property and  again falsely described members of the Bean family

as "peeping toms."

106.     Additionally, the October 2016 letter stated that the Williams had filed suit and that they

"expect the trial to attract the press, permanently damaging" Christopher Bean.

---

[5]      Plaintiffs recently produced and email dated October 4, 2016 that Reba Williams sent to the Private Lives
group that is identical to the letter cited above, except that at the end of the email it signs off "Fondly, Reba."

107.     On October 20, 2016, Reba Williams sent an email to Lynn Young stating that "just like [previous owners] Hobbs," the Bean Family "won't stop."  The email also accused one Bean Family member of staring at Ms. Williams, and states that the only reason the Williams sued the Bean Family was "because the Beans refused twice to agree to stay out of our property."

108.     The allegations contained in the October 20, 2016 email are false.

109.     These specious accusations are likely to harm the reputations of Mr. Bean, Ms. Black and Matthew Bean and damage them in their professional endeavors.

110.     These specious accusations are likely to harm the reputation of Christopher Bean and damage him in his nascent professional endeavors.

**The Williams' Withdrawal of All Claims Against Matthew Bean**

111.     On July 23, 2018, in a filing entitled "Stipulation of Discontinuance with Prejudice Solely as to Plaintiff's [sic] Claims as Against Defendant Matthew Bean," the Williams withdrew all claims against Matthew Bean. Dkt. No. 117.

**COUNTERCLAIM COUNT II – Invasion of Privacy**

112.     Paragraphs 1-111 are hereby incorporated as paragraphs 1-111 of Count Two as if fully set forth herein.

113.     Through their numerous provocative, harassing, and intimidating actions, as set forth above, the Williams have intruded upon the seclusion of the Bean Family in their Property at 28 Water Street.

114.     The Williams' intrusion upon the seclusion the Bean Family at their Property, as set forth above, would be highly offensive to a reasonable person.

115.     The Williams' actions thus constitute an intrusion upon the seclusion of the Bean Family at their Property, making the Williams liable for invasion of privacy.

## COUNTERCLAIM COUNT III – Defamation

116.     Paragraphs 1-115 of Count Two are hereby incorporated as paragraphs 1-115 of Count Three as if fully set forth herein.

117.     The Williams disparaged the Bean Family in over twenty written communications that were sent to and received by various residents of Stonington, as identified herein, on or around March 4, 2016, April 5, 2016, October 7, 2016, and the dates cited, *supra*.

118.     The statements contained in the aforementioned communications about the Bean Family, collectively and individually, are false.

119.     The Bean Family's reputation, and the reputation of each of its members, has suffered and will continue to suffer injury as a result of these disparaging, false statements.

120.     The Williams' actions thus constitute the tort of defamation.

## COUNTERCLAIM COUNT IV – Absolute Private Nuisance

121.     Paragraphs 1-120 of Count Three are hereby incorporated as paragraphs 1-120 of Count Four as if fully set forth herein.

122.     The Williams' aforementioned harassing and intimidating actions constitute an unreasonable interference with the Bean Family's use and enjoyment of their Property, have, on information and belief, decreased the fair market value of the Bean Property, have adversely affected Mr. Bean and Ms. Black's ability to sell the Bean Property, and are each a direct result of the Williams' illegal and unauthorized activities, all to the Bean Family's loss and damage.

123.     The Bean Family has no adequate remedy at law to abate the diminution in the value of their Property and the damage to their use and enjoyment of their Property caused by the Williams' actions.

124.     The interference with the Bean Family' use and enjoyment of their Property, the value of their Property, and their ability to sell their Property, is a continuing one.

125.     The interference with the Bean Family's use and enjoyment of their Property was intentional in that the Williams intended the actions that brought about the interference and in that the Williams intended to be a nuisance to the Bean Family to provoke a response, which might form the basis for a lawsuit.

126.     The Williams' actions were and are the proximate cause of an unreasonable interference with the Bean Family's use and enjoyment of the Bean Property and the Williams intended the actions that caused the interference, which is ongoing, and therefore the Williams' actions and intent constitute absolute private nuisance.

## COUNTERCLAIM COUNT V – Negligent Private Nuisance

127.     Paragraphs 1-126 of Count Four are hereby incorporated as paragraphs 1-126 of Count Five as if fully set forth herein.

128.     The Williams' aforementioned harassing and intimidating actions constitute an unreasonable interference with the Bean Family's use and enjoyment of their Property, have, on information and belief, decreased the fair market value of the Bean Property, have adversely affected Mr. Bean and Ms. Black's ability to sell the Bean Property, and are each a direct result of the Williams' illegal and unauthorized activities, all to the Bean Family's loss and damage.

129.     The Williams' interference with the Bean Family's use and enjoyment of the Bean Property is a continuing one.

130.     The Williams' interference with the Bean Family's use and enjoyment of the Bean Property was the result of the Williams' negligence.

131.     The Williams' actions were and are the proximate cause of an unreasonable interference with the Bean Family's use and enjoyment of the Bean Property, which are ongoing, and are the result of the Williams' negligence, and therefore constitute negligent private nuisance.

## COUNTERCLAIM COUNT VI – Violation of Conn. Gen. Stat. § 52-570 (Asserted by Counterclaim Plaintiffs Randall Bean and Elizabeth Black)

132.     Paragraphs 1-131 of Count Five are hereby incorporated as paragraphs 1-131 of Count Six as if fully set forth herein.

31

133.    The Williams have erected structures on their property in the form of a uniform row of 30 trees that are, at present, approximately 14 feet in height and are expected over time to grow to a height in excess of 30 feet.

134.    On information and belief, the Williams erected these structures with malicious intent to annoy and injure the Bean Family in their use and enjoyment of the Bean Property, to decrease the fair market value of the Bean Property, and to affect adversely the Bean Family's ability to sell the Bean Property.

135.    The wall of trees, which are located on the border with the Bean Property, serve no useful purpose to the Williams other than to annoy and injure the Bean Family.

136.    The Bean Family has been injured by the Williams' actions, which have annoyed and injured the Bean Family in their use and enjoyment of the Bean Property, have interfered with their ability to sell the Bean Property in the future by dissuading potential future buyers, and have impaired the fair market value of the Bean Property by eliminating one of its most desirable features, namely the Water Views.

137.    Pursuant to § 52-570 of the Connecticut General Statutes, the Bean Family is entitled to damages in the form of, but not limited to, diminution of the fair market value of the Bean Property and damages resulting from the Williams' interference with the Bean Family's peaceful use and enjoyment of the Bean Property.

32

**COUNTERCLAIM COUNT VII – Violation of Conn. Gen. Stat. § 52-480 (Asserted by Counterclaim Plaintiffs Randall Bean and Elizabeth Black)**

138.    Paragraphs 1-137 of Count Six are hereby incorporated as paragraphs 1-137 of Count Seven as if fully set forth herein.

139.    The Bean Family has no adequate remedy at law because the Williams will continue their behavior to the detriment of the Bean Family's rights and property unless ordered by the Court to cease said behavior.

140.    The Bean Family has suffered, is suffering, and will continue to suffer irreparable damage and injury without Court action.

141.    The balance of the equities favors the issuance of an injunction.

142.    Pursuant to § 52-480 of the Connecticut General Statutes, the Bean Family is entitled to equitable relief imposing such conditions on the Williams as are required to protect the Bean Family's use and enjoyment of the Bean Property and Mr. Bean and Ms. Black's ability to sell the Bean Property in the future.

143.    The Bean Family has no adequate remedy at law and seeks an injunction for the removal of the illegal and unauthorized trees and to enjoin the Williams from their continuing violation of § 52-480 of the Connecticut General Statutes.

144.    Absent Court intervention in the form of injunctive relief ordering the Williams to remove the trees and correct their violations of § 52-480 of the Connecticut General Statutes, the Bean Family will be irreparably harmed by the diminution of the value of the Bean Property, the

damage to the Bean Property, and the interference with their peaceful use and enjoyment of the
Bean Property.

### COUNTERCLAIM COUNT VIII – Private Enforcement Action: Violation of Zoning Regulations (Asserted by Counterclaim Plaintiffs Randall Bean and Elizabeth Black)

145.    Paragraphs 1-144 of Count Seven are hereby incorporated as paragraphs 1-144 of Count
Eight as if fully set forth herein.

146.    The wall of trees, as described above, blocks the border of the Bean Property from the
Williams' house all the way to the water.

147.    No trees of that type exist anywhere else on the Williams' Property.

148.    The Williams planted the trees immediately following Mr. Bean and Ms. Black's
successfully obtaining approval for their dock application and constructing a dock on the Bean
Property over the objection of the Williams.

149.    The placement and height of the wall of trees was designed to interfere with the Bean
Family's use and enjoyment of the Bean Property, to impair the fair market value of the Bean
Property, and to interfere with Mr. Bean and Ms. Black's ability to sell the Bean Property to
potential buyers.

150.    The Williams' actions have adversely affected Mr. Bean and Ms. Black's ability to sell
the Bean Property, have decreased the fair market value of the Bean Property, and have
interfered with the Bean Family's use and enjoyment of the Bean Property.

151.    The Williams have neither obtained nor applied for a zoning permit or a variance for the planting of any trees.  On information and belief, the Williams have not consulted the Town of Stonington or any of its agencies or officials about the planting of the trees or the process for doing so, including obtaining any required authorizations or approvals.

152.    The Williams' planting of the trees, which obstruct views of the sea from the Bean property and the nearest public street, is in violation of the Town of Stonington's zoning regulations because the Plaintiffs' planting of the wall of trees violates, *inter alia*, Section 3.1.1 of the Stonington Borough Zoning Regulations, which provides: "The Planning and Zoning Commission has found that the loss of aquatic vistas, blocked by buildings and structures which obstruct views of the sea, destroys the very character of the Borough as a seaside community. . . . [T]he Borough wishes to protect and enhance the remaining vistas of the sea."

153.    The Williams' planting of the trees, which obstruct views of the sea from the Bean property and the nearest public street, is in violation of the Town of Stonington's zoning regulations because the Plaintiffs' planting of the wall of trees violates, *inter alia*, Section 3.1.2.1 of the Stonington Borough Zoning Regulations, which provides: "Buildings and structures shall be located in such a way as to provide the maximum views of the water from the nearest public street, . . . ."

154.    The Williams' planting of the trees, which are fence-like in their appearance and function, is in violation of the Town of Stonington's zoning regulations because the Plaintiffs' planting of the wall of trees violates, *inter alia*, Section 3.6.3 of the Stonington Borough Zoning

Regulations, which provides: "Fences four feet or higher must be authorized by the Commission. Fences in excess of six feet in height may be authorized by Special Permit only."

155.    The Williams' planting of the trees, which constitutes a significant modification of the Williams' property, is in violation of the Town of Stonington's zoning regulations because the Plaintiffs' planting of the wall of trees violates, *inter alia*, Section 3.3.1.1 of the Stonington Borough Zoning Regulations, which provides: "All construction, modification, or change in use of buildings, facilities, and property within the coastal boundary shall be subject to . . . coastal site plan review requirements . . . ."

156.    The Bean Family is specially situated and aggrieved as an abutting landowner to the Williams' property and is particularly affected by the Williams' actions and their violations of the zoning regulations.

157.    The Williams' actions have and will continue materially to affect the Bean Family's continued peaceful use and enjoyment of the Bean Property and interfere with their property rights, including, but not limited to, their ability to sell the Bean Property.

158.    The Williams' actions have and will continue to cause the Bean Family damages and harm them and the Bean Property to their loss and damage.

159.    The Bean Family has no adequate remedy at law and seeks an injunction for the removal of the illegal and unauthorized trees and to enjoin the Williams from their continuing violation of the Zoning Regulations.

160.    Absent Court intervention in the form of injunctive relief ordering the Williams to remove the trees and correct their violations of the Zoning Regulations, the Bean Family will be irreparably harmed by the diminution of the value of the Bean Property, the damage to the Bean Property, and the interference with their peaceful use and enjoyment of the Bean Property.

### COUNTERCLAIM COUNT IX – Common Law Vexatious Litigation (Asserted by Counterclaim Plaintiff Matthew Bean)

161.    Paragraphs 1-160 of Counterclaim Count Eight are hereby incorporated as paragraphs 1-160 of Counterclaim Count Nine as if fully set forth herein.

162.    As noted, *supra*, during the relevant dates Matthew Bean worked full-time in Boston as an investment advisor and visited Stonington only occasionally.

163.    Matthew Bean committed none of the allegations stated in the Williams' Complaint, which the Williams knew when they filed suit.

164.    On information and belief, the instant Complaint against the Bean Family, including Matthew Bean, was brought by the Williams primarily for the purpose of continuing the pattern of actions constituting harassment, provocation, and intimidation of the Bean Family, outlined above, in retaliation for obtaining approval for and constructing a dock, and for renovating the Bean Property, and not for any legitimate purpose for the redressing of alleged wrongs committed by the Bean Family, as there are none.

165.    Because the claims against Matthew Bean were filed without probable cause as to their sufficiency, because the Williams' claims against Matthew Bean were brought for a malicious desire to injure and harass Matthew Bean rather than a legitimate reason to redress wrongs, and

because the claims against Matthew Bean have now been terminated in a manner favorable to

Matthew Bean, the Williams are liable for common law vexatious litigation.

**COUNTERCLAIM COUNT X – Violation of Conn. Gen. Stat. § 52-568 Vexatious
Litigation (Asserted by Counterclaim Plaintiff Matthew Bean)**

166.     Paragraphs 1-165 of Counterclaim Count Nine are hereby incorporated as paragraphs 1-

165 of Counterclaim Count Ten as if fully set forth herein.

167.     As noted, *supra*, during the relevant dates Matthew Bean worked full-time in Boston as

an investment advisor and visited Stonington only occasionally.

168.     Matthew Bean committed none of the allegations stated in the Williams' Complaint,

which the Williams knew when they filed suit.

169.     On information and belief, the instant Complaint against the Bean Family, including

Matthew Bean, was brought by the Williams primarily for the purpose of continuing the pattern

of actions constituting harassment, provocation, and intimidation of the Bean Family, outlined

above, in retaliation for obtaining approval for and constructing a dock, and for renovating the

Bean Property, and not for any legitimate purpose for the redressing of alleged wrongs

committed by the Bean Family, as there are none.

170.     Because the claims against Matthew Bean were filed without probable cause as to their

sufficiency, and because the claims against Matthew Bean have now been terminated in a

manner favorable to Matthew Bean, the Williams have violated Conn. Gen. Stat. § 52-568(1).

171.    Because the claims against Matthew Bean were filed without probable cause as to their sufficiency, because the Williams' claims against Matthew Bean were brought for a malicious desire to injure and harass Matthew Bean rather than a legitimate reason to redress wrongs, and because the claims against Matthew Bean have now been terminated in a manner favorable to Matthew Bean, the Williams have violated Conn. Gen. Stat. § 52-568(2).

**COUNTERCLAIM COUNT XI – Abuse of Process**
**(Asserted by Counterclaim Plaintiff Matthew Bean)**

172.    Paragraphs 1-171 of Counterclaim Count Ten are hereby incorporated as paragraphs 1-171 of Counterclaim Count Eleven

173.    On or about March 4, 2016, just five days after DEEP issued its tentative dock approval for the Bean Family's dock off the Bean Property, the Williams sent one or more emails disparaging the Bean Family to residents of the Town of Stonington and indicating their displeasure with the dock.

174.    Thereafter, on March 7, 2016, Ms. Williams wrote to Ms. Black threatening unspecified legal action.

175.    Upon the Bean Family's move into the Bean Property, the Williams embarked on a campaign of harassment, provocation, and intimidation of the Bean Family outlined above, which, on information and belief, was in retaliation for the Bean Family's obtaining approval for, and constructing a dock on the Bean Property and for the Bean Family's renovation of the Bean Property.

176.    On information and belief, the instant Complaint against the Bean Family was brought by the Williams primarily for the purpose of continuing the pattern of actions constituting harassment, provocation, and intimidation of the Bean Family, outlined above, in retaliation for obtaining approval for and constructing a dock, and for the Bean Family's renovation of the Bean Property, and not for any legitimate purpose for the redressing of alleged wrongs committed by the Bean Family, as there are none.

177.    The Williams made clear that their purpose in filing and prosecuting this action through trial, was to attract the press at trial, thereby permanently damaging Christopher Bean.

178.    The Williams also made clear that another purpose of this lawsuit was, as they did with the previous owners of the Bean Property, the Hobbs, to run the Bean Family, including Matthew Bean, out of Stonington.

179.    Because the Complaint against the Bean Family was, on information and belief, brought by the Williams primarily for the purpose of continuing the pattern of actions constituting harassment, provocation, and intimidation of the Bean Family outlined above in retaliation for the Bean Family's obtaining approval for and constructing a dock and for renovating the Bean Property, and not for any legitimate purpose, and because Williams intent in maintaining and prosecuting this lawsuit through trial is to permanently damage Christopher Bean through negative, reputation-destroying press, and because the Williams ultimate purpose in filing and continuing to prosecute this lawsuit is to run the Bean Family, including Matthew Bean, out of Stonington, the Williams' lawsuit constitutes the tort of abuse of process.

## PRAYER FOR RELIEF

**WHEREFORE**, the Defendants and Counterclaim Plaintiffs seek:

1.       Money damages, including compensatory damages and punitive damages as allowed

under, *inter alia*, common law and Conn. Gen. Stat. § 52-570;

2.       Enhanced double damages as permitted by Conn. Gen. Stat. § 52-568(1).

3.       Enhanced treble damages as permitted by Conn. Gen. Stat. § 52-568(2).

4.       Permanent injunctive relief ordering that the Plaintiffs David and Reba Williams: (i)

correct their violations of the Zoning Regulations including, *inter alia*, Sections 3.1.1, 3.1.2.1,

3.6.3, and 3.3.1.1 of the Stonington Borough Zoning Regulations; (ii) remove the offending trees

as allowed under common law and Conn. Gen. Stat. § 52-480; and (iii) cease and desist any

threatening, harassing or defamatory statement of or related to the Bean family.

5.       All lawful costs, fees, expenses and interest, including attorneys' fees; and

6.       Such other relief as the Court may deem appropriate.

## JURY DEMAND

The Defendant/Counterclaim Plaintiffs hereby demand a trial by jury on all issues so

triable.

Respectfully submitted,

THE DEFENDANTS,
RANDALL BEAN, ELIZABETH BLACK,
CHRISTOPHER BEAN, AND MATTHEW BEAN

By: */s/ James R. Nault*

      Joseph L. Clasen (ct04090)
      James R. Nault (ct29500)
      Robinson & Cole LLP
      280 Trumbull Street
      Hartford, CT 06103
      Telephone: (860) 275-8200
      Fax: (860) 275-8299
      Emails: jclasen@rc.com

      jnault@rc.com

**As to the Answer and Affirmative Defenses
Only:**

By: */s/ Michael T. Ryan*
      Michael T. Ryan, Esq. (ct05685)
      Ryan Ryan Deluca LLP
      707 Summer Street
      Stamford, CT 06901
      Telephone: (203) 357-9200
      Email: MTRyan@RyanDelucaLaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


*/s/ James R. Nault*
James R. Nault