# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

-----------------------------------------------------X

DAVE H. WILLIAMS and
REBA W. WILLIAMS,

        Plaintiffs/Counterclaim
        Defendants

        v.

RANDALL BEAN  ET. AL.,

        Defendants/Counterclaim
        Plaintiffs

-----------------------------------------------------X

CIVIL ACTION

NO.: 3:16-cv-01633 (VAB)

## PLAINTIFFS/COUNTERCLAIM-DEFENDANTS'
## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS/
## COUNTERCLAIM-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**LAW OFFICES OF DAVID C. BERG**
425 Madison Avenue, 19th Floor
New York, New York 10017
(212) 829-0400
*Attorneys For Plaintiffs Dave H. Williams
and Reba W. Williams*

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 56 ("Rule 56") and D. Conn. Local Rule 56(a)(2), Plaintiffs,

by their undersigned attorneys, submit this memorandum of law in opposition to the motion for

summary judgment ("Defendants' SJ Motion") submitted by Defendants Randall Bean ("R.

Bean"), Elizabeth Black ("E. Black"), Christopher Bean ("C. Bean"), and Matthew Bean ("M.

Bean")[1] (collectively, "Defendants" with respect to the claims (the "Claims") in Plaintiffs'

Complaint (ECF No. 1) (the "Complaint" in this action (the "Action").  For the reasons set forth

below and in Plaintiffs' Local Rule 56(a)(2) Statement of Facts In Opposition To Summary

Judgment ("Plaintiffs' SOF Response")[2] and the exhibits thereto, Plaintiffs respectfully request

that the Court denies Defendants' SJ Motion in its entirety.

## PRELIMINARY STATEMENT AND BRIEF
## SUMMARY OF RELEVANT BACKGROUND

Defendants' SJ Motion is a transparent, last-ditch attempt to avoid liability to Plaintiffs

with respect to the Claims – the resolute certainty of which liability (on the part of Defendants)

was firmly established in discovery and amply demonstrated in Plaintiffs' pending motion for

summary judgment ("Plaintiffs' SJ Motion").  (*See* ECF Docket No. 118).

Unable to escape Plaintiffs' clear-cut entitlement to summary judgment in their favor on

each of the Claims, in Defendants' SJ Motion, Defendants engage in a series of unrelated detours

in a flagrant effort to divert the Court from the factual record and well-settled law.  In so doing,

Defendants egregiously *mischaracterize* the undisputed facts– including, amazingly, Plaintiffs'

---

[1] On July 23, 2018, Plaintiffs filed a Stipulation of Discontinuance solely with respect to M. Bean.  (ECF Docket No. 117).

[2] Citations in the form "(Defendants' SOF, __)" refer to exhibits to and/or paragraphs in Defendants' Local Rule 56(a)(1) Statement Of Undisputed Material Facts ("Defendants' SOF"); citations in the form "(Plaintiffs' SOF Response, __)" refer to paragraphs in and/or exhibits to Plaintiffs' SOF Response, filed herewith.  Citations to the enumerated paragraphs in Plaintiffs' SOF Response shall incorporate by reference the corresponding exhibits cited in each paragraph. Citations in the form "(Defendants' MOL, p. __)" shall refer to the enumerated pages in Defendants' Memorandum of Law In Support Of Motion For Summary Judgment.  (*See* CM/ECF No. 115-1).

allegations in the Complaint -- and rely on facially inapposite and wholly inapplicable legal standards.  Further, despite not seeking summary judgment with respect to any of their counterclaims (the "Counterclaims") (in that, undeniably, any such motion would be entirely frivolous and futile), Defendants devote an enormous portion of Defendants' MOL and Defendants' SOF to recounting their meritless version of the "facts" as relates solely to the Counterclaims.  (Defendants' MOL, pps. 1-12; Defendants' SOF, ¶¶26-29, 34-36, 38-39, 41, 42). In that such litany has no bearing whatsoever on Defendants' SJ Motion, and in that Plaintiffs have already soundly demonstrated the absence of any merit whatsoever to the Counterclaims in Plaintiffs' SJ Motion, which is currently *sub judice*, this memorandum of law shall only address those arguments which relate to the Claims as to which Defendants seek -- albeit, baselessly -- summary judgment.

Moreover, in that the evidence in the record – *i.e.*, developed *solely* during the discovery period set by the Court – mandates denial of Defendants' SJ Motion, Defendants brazenly flout the Court's So-Ordered Scheduling Order -- according to which discovery closed approximately five (5) months ago -- by unilaterally annexing documents to Defendants' SOF which were not produced in discovery and, thus, do not constitute part of the record in the Action.[3]

As demonstrated herein, Defendants' SJ Motion is bereft of any cognizable factual and/or legal support whatsoever which warrants summary judgment in their favor with respect to any of the Claims.  Specifically:

(i)     With respect to the First Claim for invasion of privacy ("First Claim"), asserted against C. Bean, Defendants ***ignore*** the volumes of evidence – and, glaringly, C. Bean's sworn

---

[3] Defendants' *post hoc*, about-face attempt to introduce a host of extraneous materials which are not part of the record established in discovery is particularly astounding in light of their prior, vigorously asserted opposition, as set forth in their March 5, 2018 letter to the Court, to any extension of the discovery period in this Action.  (*See* ECF Docket No. 92).

admissions – that irrefutably demonstrate that he monitored, surveilled, "shadowed", and photographed Plaintiffs at their private home at 24 Water Street in Stonington, Connecticut (the "Williams Property") where, according to black-letter legal principles, Plaintiffs have – and at all relevant times had – a "reasonable expectation of privacy."  (*See*, *infra*, at pps. 5-18).  Further, Defendants wholly ***ignore*** their own explicit deposition admissions that they do not have *any* personal knowledge whatsoever regarding same and that their sole source of information regarding what transpired on the subject dates at the Bean Property is **C. Bean** who – amazingly – confessed at his deposition that he "does not know" the basis for his denials and affirmative defenses in Defendants' Answer with respect to Plaintiffs' invasion of privacy allegations;

(ii) With respect to the Second Claim (aiding and abetting invasion of privacy, asserted against R. Bean and E. Black) ("Second Claim") and Third Claim (conspiracy to invade privacy, asserted against all Defendants)("Third Claim"), Defendants' lone purported basis for seeking summary judgment is a readily refuted, barebones statement that "no underlying tort" was committed by C. Bean – which "underlying tort", *i.e.,* the aforesaid invasion of Plaintiffs' privacy -- C. Bean candidly boasted at his deposition he did, in fact, commit; and regarding which Defendants produced volumes of concrete photographic and text-message evidence.  By disregarding the remaining elements for the Second and Third Claims, Defendants concede that Plaintiffs have satisfied same;

(iii) With respect to the Fourth Claim for negligent infliction of emotional distress ("Fourth Claim") asserted against C. Bean, unable to overcome the plethora of evidence which demonstrates the emotional distress suffered by Plaintiffs as a result of C. Bean's campaign to invade Plaintiffs' privacy – pursuant to his parents' explicit instructions and in furtherance of their objective to "make [Plaintiffs] ***miserable***" – in Defendants' SJ Motion, C. Bean *flatly*

*ignores* such evidence (having no retort to same) and, instead, relies entirely on a gravely, callously mischaracterized version of Plaintiffs' testimony;

(iv) With respect to the Fifth Claim for aiding and abetting negligent infliction of emotional distress ("Fifth Claim"), R. Bean's and E. Black's only purported argument is a conclusory denial that C. Bean is liable pursuant to the Fourth Claim – which unsupported, blanket denial is pointedly contradicted by the substantial evidence; again, Defendants concede defeat with respect to all of the remaining elements of the Fifth Claim by ignoring same; and

(v) With respect to the Sixth Claim for a permanent injunction ("Sixth Claim") by which Plaintiffs seek to enjoin Defendants' violative misconduct -- monitoring, surveilling, photographing, and/or otherwise "interfering with and/or invading Plaintiffs' rights to privacy" -- Defendants inexplicably rely on flatly irrelevant factual and legal arguments, including a facially absurd contention that Plaintiffs are not entitled to enjoin Defendants' violative *conduct* because they did not oppose Defendants' "*renovations*", which outlandish contention Defendants buttress with legal standards pertinent only to actions to "privately enforce *zoning regulations*" – which the Sixth Claim decidedly is not.

Thus, for the reasons set forth below, and as demonstrated in Plaintiffs' SOF Response, Defendants' SJ Motion must be denied in its entirety.

## ARGUMENT

### I.   Legal Standard Pursuant To F.R.C.P. 56

Pursuant to FRCP 56, the "moving party bears the burden of showing that no genuine dispute of material fact exists"; "[o]nce the moving party has satisfied that burden, the nonmoving party 'must set forth specific facts demonstrating that there is a genuine issue for trial' in order to defeat the motion for summary judgment." *Equal Employment Opportunity*

*Commission v. Day & Zimmerman NPS, Inc.*, 265 F.Supp.3d 179, 190 (D. Conn. 2017) (Bolden, J.); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000); *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A "material fact" is one that would "affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 255.

Further "[i]n considering the motion for summary judgment", "the Court must view all inferences and ambiguities in a light most favorable to the nonmoving party." *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *Marzullo v. Onofrio*, No. 3:14-cv-46, 2016 WL 4250224, at *2-3 (D. Conn. Aug 10, 2016).   Thus, "[i]f there is ***any*** evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought…summary judgment is improper."   *McClendon v. Murphy*, No. 3:14-cv-1460, 2017 WL 1115200, at *1 (D. Conn. March 24, 2017)(emphasis added).

## II.   C. Bean Is Not Entitled To Summary Judgment In His Favor With Respect To Plaintiffs' First Claim For Invasion Of Privacy[4]

Under Connecticut law, invasion of privacy is comprised of four (4) separate torts, including "intrusion upon…the solitude or seclusion of another or his private affairs or concerns", upon which the First Claim is based. *Gallagher v. Rapoport*, No. CV 960149891S, 1997 WL 240907, at *2 (Conn. Super. Ct. May 6, 1997)(emphasis added); *WVIT, Inc. v. Gray*, No. CV 950547689S, 1996 WL 649334, at *2-3 (Conn. Super. Ct. Oct. 25, 1996).   Specifically, in the First Claim, Plaintiffs allege that, *inter alia*, C. Bean "intentionally and unreasonably interfered with, invaded, and intruded on" Plaintiffs' "rights to solitude, seclusion, and privacy in their home and on their property." (Plaintiffs' SOF Response, Ex. 9 at ¶¶33-39).   Thus, the

---

[4] Plaintiffs voluntarily discontinued the Claims as asserted against M. Bean. (*See*, *supra*, at fn.1).

arguments in Defendants' MOL regarding invasion of privacy based upon "unreasonable publicity" and "appropriation" are irrelevant and will not be addressed herein.[5]  (Defendants' MOL, pps. 18-25, 32-33).

Defendants' MOL confirms that summary judgment is not warranted in Defendants' favor with respect to the First Claim for invasion of privacy by "intrusion upon" Plaintiffs' "solitude or seclusion" for the reasons set forth below.  *Id.*

### 1.    C. Bean Indisputably, Admittedly Spied On And Surveilled Plaintiffs And The Williams Property

Without question, the undisputed evidence – including C. Bean's express, sworn admissions at his deposition – unequivocally demonstrated that C. Bean spied on and surveilled Plaintiffs on several dates in or about June and July 2016.  (Plaintiffs' SOF Response, ¶¶94-114). In no uncertain terms, C. Bean overtly testified -- in detail and with particularity -- regarding the precise manner in which he intentionally eavesdropped on, monitored, and photographed Plaintiffs and the Williams Property for prolonged periods of time on several dates, which spying and surveillance he deliberately undertook in order to "get[] in [Plaintiffs'] face[s]."  (Plaintiffs' SOF Response, ¶¶94-114).

Moreover, C. Bean's definitive, explicit admissions regarding his violative conduct were buttressed by a plethora of undisputed, corroborating evidence, including, *inter alia*, (i) undisputed testimony by Plaintiffs and their landscaper, Matthew McMillan, who witnessed C. Bean's unlawful, intrusive conduct; (ii) R. Bean's, E. Black's, and M. Bean's candid, blanket admissions that they have no personal knowledge whatsoever regarding same; and (iii) C. Bean's

---

[5] In the Complaint, Plaintiffs do not assert an independent invasion of privacy claim based on "unreasonable publicity" and/or "appropriation".  (Plaintiffs' SOF Response, Ex. 9).  Allegations regarding "C. Bean appropriat[ing] the names and/or likeness of the Williams" and "publiciz[ing] photographs, audio recordings and/or digital/video recordings of the Williams" "*in conducting the aforesaid Surveillance Activities*" were pled *within* and solely relating to the First Claim for invasion of privacy, not a separate claim for invasion of privacy by "unreasonable publicity" and/or "appropriation", and additionally, in the Sixth Claim for a permanent injunction. (Plaintiffs' SOF Response, Ex. 9 at ¶¶35, 39).

confession that he ***does not know*** the basis for any of his own denials and/or affirmative defenses with respect to Plaintiffs' invasion of privacy claim.   (Plaintiffs' SOF Response, ¶¶94-114).

Notwithstanding, in a farcical effort to avoid the plain import of the foregoing, in Defendants' SJ Motion, Defendants deceptively *omit* and blatantly *mischaracterize* critical, undisputed facts regarding C. Bean's spying and surveillance on, *inter alia*, June 29, 2016, July 8, 2016, July 19, 2016, and July 20, 2016.  (Plaintiffs' SOF Response, ¶¶94-114).   Defendants' *post hoc* effort to escape the uncontroverted evidence is entirely improper and must be disregarded, as set forth below.

First, it is irrefutable that C. Bean surveilled Plaintiffs and their guests on June 29, 2016 during a party hosted by Plaintiffs at the Williams Property, and contemporaneously reported his observations of same to R. Bean and E. Black ("Mr. and Mrs. Bean") via text message, *to wit*, "***party at Williams***" (Plaintiffs' SOF Response, ¶95)(emphasis added).  Moreover, C. Bean's surveillance of Plaintiffs, their guests, and the Williams Property on June 29, 2016 was pursuant to R. Bean's and E. Black's boldly announced objective to "***make [Plaintiffs] miserable***", and immediately followed C. Bean's surveillance of Plaintiffs the week prior (on June 22, 2016), on which date C. Bean reported to R. Bean and E. Black "some people back there today talking about planting evergreens" "think that's what I heard."  (Plaintiffs' SOF Response, ¶¶90, 94-95).

Yet, shockingly, in Defendants' SJ Motion, they falsely argue that "***[o]ther than the Plaintiffs' claims***, there is no evidence that this incident [on June 29, 2016] ever occurred", which is directly refuted by the foregoing overwhelming evidence and, thus, is without merit. (Plaintiffs' SOF Response, ¶95); (Defendants' MOL, p. 13)(emphasis added).

Second, C. Bean explicitly, unambiguously admitted that he surveilled Plaintiffs, their landscaper (Matthew McMillan), and the Williams Property on July 8, 2016. (Plaintiffs' SOF Response, ¶¶96, 102-104). Unable to refute the foregoing evidence, in Defendants' SJ Motion, Defendants necessarily concede that C. Bean unauthorizedly surveilled and photographed Plaintiffs and the Williams Property on July 8, 2016. (Defendants' MOL, p. 14).

Yet, without any legal basis whatsoever, in an effort to *excuse* and/or *trivialize* C. Bean's admitted invasion of Plaintiffs' privacy on July 8, 2016, Defendants (i) gravely mischaracterize Mr. Williams' and Mr. McMillan's respective testimony, and (ii) irrelevantly argue (again, without any legal support) that C. Bean was *permitted* to invade Plaintiffs' privacy because, purportedly, "Mr. and Mrs. Bean were obviously interested in how high the trees would be" -- which last-ditch, concocted excuse has no legal bearing on C. Bean's certain liability, and is, in fact, entirely circular. (Defendants' MOL, pps. 13-14).

Moreover, Mr. Williams and Mr. McMillan did not testify that they "*began to believe that someone was in the Bean's yard 'shadowing' them*", as falsely stated in Defendants' MOL; rather, they each unequivocally testified that C. Bean was, in fact, "shadowing" them "step for step" along the hedge dividing Mr. and Mrs. Bean's property (the "Bean Property") from the Williams Property. (Defendants' MOL, p. 13)(emphasis added); (Plaintiffs' SOF Response, ¶¶96-100).

Third, in Defendants' SJ Motion, Defendants deceptively *omit* the critical, undisputed fact that, on July 19, 2016, C. Bean *again* surveilled and photographed Plaintiffs and the Williams Property. (Defendants' MOL, p. 14); (Plaintiffs' SOF Response, ¶¶105-109). Tellingly, on July 19, 2016 – the precise date when C. Bean admittedly surveilled and photographed Plaintiffs and the Williams Property – he exchanged vile, abhorrent text messages

with M. Bean in which he stated, regarding Mrs. Williams, "I went SUPing and waved at her, cunt", to which M. Bean responded "Love *getting in their face*…they *can't block that out*". (Plaintiffs' SOF Response, ¶108)(emphasis added).

<u>Fourth</u>, with respect to C. Bean's admitted surveillance and photographing of Plaintiffs and the Williams Property on July 20, 2016, in Defendants' MOL, they astoundingly *ignore* the abundance of concrete, unrebutted evidence confirming C. Bean's flagrant misconduct on that date, including, *inter alia*, his express, sworn admissions at his deposition (i) that he monitored events occurring at the Williams Property and photographed same on that date; and (ii) that he did so pursuant to Mr. and Mrs. Bean's request, and in furtherance of R. Bean's foreboding admonition and directive to C. Bean, *i.e.*, "Hope they are **afraid** of us", which C. Bean testified was a "truthful" statement by R. Bean.  (Plaintiffs' SOF Response, ¶¶110-114).

In a feeble effort to overcome the foregoing, in Defendants' SJ Motion, Defendants *solely* rely on vague testimony by Plaintiffs' then gardener, Charles Brodasky, regarding whether he "recall[ed]" observing C. Bean "pick up a ladder on the Bean Residence, climb it, and wave his arms around", whether Mrs. Williams "told him that she saw Christopher…Bean on a ladder", and/or whether he "recall[ed] any incident in which someone from the Bean's property trespassed or spied on the Plaintiffs." (Defendants' MOL, pps. 14-15).   Remarkably, Mr. Brodasky's wholly equivocal testimony consisted entirely of conjecture and guesswork in light of his admitted uncertainty regarding the April-July 2016 time period; specifically, at his deposition, he consistently surmised, *inter alia*, "I couldn't swear to it"; "They probably did"; "You would have to refresh my memory"; "I'm not sure…"; "I doubt…"; "I don't remember"; "[I] could surmise"; "it's hard to remember"; "I probably said…"; "it would probably have been…"; "I don't recall speaking to him"; "My best guess…"; "I don't recall…"; "I'm pretty

sure that I said…"; and "I'm not sure now, come to think of it".  (Plaintiffs' SOF Response, ¶¶115-120).

In point of fact, Mr. Brodasky conceded that he could <u>not</u> even recall when he was present at the Williams Property on July 20, 2016, and admitted that he ***does not even know C. Bean***.  (Plaintiffs' SOF Response, ¶¶115, 119).   Mr. Brodasky also readily conceded that he "was too far away to see which way the person [at the Bean Property] was looking", and that immediately after Mrs. Williams "saw somebody" and "yelled for her husband", Mr. Brodasky "***went the other way***."  (Plaintiffs' SOF Response, ¶117)(emphasis added)   Thus, Mr. Brodasky's testimony is, on its face, nothing more than guesswork and, in light of his concession that he "went the other way" after Mrs. Williams "yelled for her husband", he irrefutably lacks *any* personal knowledge whatsoever with respect to anything that transpired thereafter. (Plaintiffs' SOF Response, ¶¶115-120).

Defendants' singular reliance on Mr. Brodasky's suppositions  -- and their corresponding disregard of the volumes of *concrete* evidence confirming C. Bean's misconduct on that date (including his own admissions and the remaining Defendants' wholesale lack of any personal knowledge regarding same) -- is, at a minimum, preposterous.  (Plaintiffs' SOF Response, ¶¶115-120); (Defendants' MOL, pps. 14-15).

Unquestionably, C. Bean's sworn admissions regarding his wrongful acts – and the plethora of text messages sent by him on that date documenting and describing his observations of the private Williams Property, and attaching photographic evidence of same – are unwaveringly binding; Mr. Brodasky's speculations do nothing whatsoever to circumvent same. (Plaintiffs' SOF Response, ¶¶110-120); (Defendants' MOL, pps. 14-15).

2.     **C. Bean's Admitted Invasion Of Plaintiffs' Privacy Is Not Contingent On Any *"Physical* Entry" By Him Onto The Williams Property**

It is well-settled that "[o]ne who intentionally intrudes *physically or otherwise*, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." *Gallagher*, 1997 WL 240907, at *2; *WVIT, Inc.*, 1996 WL 649334, at *2-3. It was firmly established in discovery that C. Bean *"*intentionally intrud[ed]...upon the solitude or seclusion of" Plaintiffs' "private affairs or concerns", as confirmed by his unequivocal sworn admissions at his deposition that he repeatedly eavesdropped on, monitored, and photographed Plaintiffs and the Williams Property on, *inter alia*, at least July 8, 2016, July 19, 2016, and July 20, 2016. *Id.*; *Vasyliv v. Adesta, LLC*, CV 106011737S, 2010 WL 5610901, at *3 (Conn. Super. Ct. Dec. 20, 2010); (Plaintiffs' SOF Response, ¶¶96-114).

Unable to overcome the foregoing, Defendants' MOL relies entirely on drastic misstatements regarding the allegations in the Complaint and pointedly inapposite legal standards, none of which entitles C. Bean to summary judgment with respect to the First Claim. (Defendants' MOL, pps. 25-33). Inexplicably, and in direct contravention of the well-settled law, in Defendants' MOL, Defendants seek summary judgment in C. Bean's favor on the basis that "neither Matthew no[r] Christopher Bean went on the Plaintiffs' property" or "*physical[y]"* "entered their home." (Defendants' MOL, pps. 26-28)(emphasis added). Defendants' argument is legally irrelevant and, thus, must be disregarded. *See, e.g.*, *Gallagher*, 1997 WL 240907, at *1-2.

It is axiomatic that a "*physical*" intrusion is <u>not</u> required to prove a claim for invasion of privacy by "intrusion" upon "solitude or seclusion". *Id.* Rather, "[o]ne who intentionally intrudes *physically <u>or otherwise</u>*, upon the solitude or seclusion of another or his private affairs

11

or concerns, is subject to liability to the other for invasion of privacy". *Id.* (*citing* Restatement (Second), Torts § 652B (1977))(emphasis added). Indeed, while the basis for an invasion of privacy claim "***may be*** by physical intrusion", alternatively, the grounds for such claim "***may also be*** by the use of the defendant's sense[s] …to oversee or overhear the plaintiff's private affairs". *Carney v. Amendola*, No. CV106003738, 2014 WL 2853836, at *17 (Conn. Super. Ct. May 14, 2014)(*citing* Restatement (Second) of Torts §652(B))(emphasis added).

As confirmed by the Complaint, Plaintiffs unambiguously pled that C. Bean "interfered with, invaded, and intruded upon the Williams' rights to solitude, seclusion, and privacy" "by the use of [C. Bean's] sense[s]…to oversee or overhear" Plaintiffs' "private affairs." *Id.*; (Plaintiffs' SOF Response, Ex. 9 at ¶¶33-34). Thus, Defendants' reliance on cases concerning, *inter alia*, ***physical*** "entry onto plaintiff's property", "***trespass[ing]*** on the business property of the plaintiff", and "***physical entry*** into the private areas of the plaintiff" miss the mark entirely, in that the First Claim is not based – or legally dependent -- on "***physical*** entry" by C. Bean onto the Williams Property. (Defendants' MOL, pps. 25-28)(emphasis added); (Plaintiffs' SOF Response, Ex. 9 at ¶¶33-34). Insofar as a "physical" intrusion is unquestionably <u>not</u> a required element for an invasion of privacy claim, Defendants' argument that "neither Matthew no[r] Christopher Bean ***went on the Plaintiffs' property***" has no bearing on C. Bean's liability under the First Claim. *Id.*; (Defendants' MOL, p. 28)(emphasis added).

Moreover, C. Bean's conclusory argument in Defendants' MOL that "Nor did [Matthew Bean or Christopher Bean] ever use their senses to ***oversee or overhear*** the Plaintiffs' private affairs" is negated by the undisputed factual record, including, *inter alia*, C. Bean's unequivocal admissions at his deposition that he (i) eavesdropped on Plaintiffs' private conversations at the Williams Property and reported same to Mr. and Mrs. Bean via text messages; and (ii)

photographed Plaintiffs and/or the Williams Property on multiple days, and disseminated those photographs via text messages to Mr. and Mrs. Bean.  (Defendants' MOL, p. 28); (Plaintiffs' SOF Response, ¶¶94-114).  Without question, the record conclusively verifies that C. Bean "use[d] [his] senses to oversee" and "overhear" "Plaintiffs' private affairs"; thus, C. Bean's astonishing, conclusory statement to the contrary in Defendants' MOL (notably without citation to any purported evidence, as none supports same) must be rejected.  *Carney*, 2014 WL 2853836, at *17.

### 3.  Plaintiffs Indisputably Have, And At All Relevant Times Had, A "Reasonable Expectation Of Privacy" While At The Williams Property

C. Bean's argument that Plaintiffs did not have a "reasonable expectation of privacy" *while at their private residence* is patently devoid of any merit whatsoever and belied by the undisputed factual record and an abundance of legal authority.  (Defendants' MOL, pps. 28-32); *WVIT, Inc.*, 1996 WL 649334, at *3; *Gullong v. Nurmi*, CV156013784, 2017 WL 960989, at *9 (Conn. Super. Ct. Feb. 8, 2017) ("[s]urveillance of a person's residence has been recognized as a particularly sensitive area including a higher level of privacy…").  Accordingly, "a person's residence" is a "sphere[] from which [they] could reasonably expect" others to "be excluded".  *WVIT, Inc.*, 1996 WL 649334, at *3 (internal citation omitted).  Thus, it is irrefutable that Plaintiffs "could *reasonably expect*" to be protected by a "**higher** level of *privacy*" while at the Williams Property.  *Id.* (emphasis added); *Gullong*, 2017 WL 960989, at *9 (emphasis added).

Notwithstanding, and flagrantly ignoring the firmly entrenched law, C. Bean incredulously seeks summary judgment with respect to the First Claim by arguing that "Plaintiffs did not have any reasonable expectation of privacy" while at their private residence at the Williams Property.  (Defendants' MOL, p. 31).  In so doing, C. Bean brazenly demands that the Court *ignore* the overwhelming legion of applicable caselaw and, instead, rely solely upon

13

glaringly inapposite "Fourth Amendment decisions discussing…the application of the plain view

doctrine" with regard to "police traveling in the public airways". (Defendants' MOL, pps. 28-

32). C. Bean's far-fetched argument is unavailing for a multitude of reasons, as set forth below.

(Defendants' MOL, pps. 28-32).

    First, C. Bean's distorted reliance on *Gullong v. Nurmi* is highly disingenuous, at best, in

that *Gullong* clearly does not support C. Bean's tenuous position. (Defendants' MOL, pps. 28-

29); *Gullong*, No. CV-156013784, 2016 WL 7165014, at \*3 (Conn. Super. Ct. Nov. 8, 2016). In

*Gullong*, the Court noted that "[c]ases addressing the fourth amendment may be instructive in

determining whether there is a reasonable expectation of privacy in a particular area." *Id*.

Tellingly, in so doing, the court distinguished between "a diminished expectation of privacy in a

***front driveway*** that is ***freely accessible*, in contrast with** an area in which one has manifested an

***intent to keep private***, such as a driveway ***behind a fence***". *Id.* (emphasis added).

    Further, the court in *Gullong* explicitly recognized the existence of an "expectation of

privacy" in an "***interior*** driveway behind" an "electronic security gate" and, similarly, an

"expectation of privacy in [the] ***back portion*** of [a] driveway, ***behind [a] fence***". *Id.* (citing

*State v. Ryder,* 301 Conn. 810, 822–25, 23 A.3d 694 (2011); *State v. Brocuglio,* 64 Conn.App.

93, 102–04, 779 A.2d 793 (Conn. App. Ct. 2001))(emphases added). Therefore, according to

*Gullong*, Plaintiffs clearly *do* have a reasonable "expectation of privacy" in the "back portion" of

the Williams Property, the rear garden thereof which is indisputably shielded from the Bean

Property by a privacy hedge and/or trees. *Id.*; *see also Hart v. Myers*, 183 F. Supp.2d 512, 520

(D. Conn. 2002)(internal citation omitted); *California v. Ciraolo*, 476 U.S. 207, 213-14

(1986)("privacy expectations are most heightened" in the home and "the curtilage" surrounding

the home); (Defendants' SOF,¶¶ 46-47); (Plaintiffs' SOF Response, Ex. 1 at ¶88).

Thus, C. Bean's woeful mischaracterization of *Gullong* does nothing to remove the

Williams Property from the "heightened" "sphere" in which Plaintiffs can – and did --

"reasonably expect" to maintain a "higher level of privacy" under the well-settled law.

(Defendants' MOL, pps. 28-29); *Id.; WVIT, Inc.*, 1996 WL 649334, at *3; *Gullong*, 2017 WL

960989, at *9; *Curaolo*, 476 U.S. at 213-214.

    <u>Second</u>, even assuming, *arguendo*, that C. Bean's strained extrapolation from *dicta* in

*Gullong* was proper (which it decidedly is not (*see*, *supra*)), C. Bean's reliance on Fourth

Amendment "aerial surveillance" cases must be given short shrift.  (Defendants' MOL, pps. 29-

31).  In light of the clear-cut law which unequivocally confirms Plaintiffs' "reasonable

expectation of privacy" at the Williams Property, C. Bean's reliance on "aerial surveillance"

cases – premised upon law enforcement objectives – to immunize C. Bean's admitted,

intentional surveillance of Plaintiffs at the Williams Property – is incredulous.

    Unquestionably, *none* of the "aerial surveillance" cases cited in Defendants' MOL

supports their unfounded attempt to nullify Plaintiffs' "reasonable expectation of privacy" at

their private home. *WVIT, Inc.*, 1996 WL 649334, at *3; *Gullong*, 2017 WL 960989, at *9;

*Curaolo*, 476 U.S. at 213-215.  Rather, the crux of those cases is "overhead surveillance" by

"police traveling in the public airways" where "precautions" are not "taken…to prevent"

"viewing from the air." *Florida v. Riley*, 488 U.S. 445 (1989)(cited in Defendants' MOL, pps.

29-30).  Critically, as Defendants concede, in *Riley*, the court expressly distinguished between

"**precautions** [defendant] took…against ***ground-level*** observation" – *where* "trees" and "shrubs"

"obscured…view from surrounding property" -- and the fact that <u>no</u> such "precautions" existed

which protected against "viewing from the air." *Id.* (emphasis added); *Brocuglio*, 64 Conn. App.

at 800-801 (distinguishing between "open, unfenced driveway" "in front of the house" and

"private", "fenced backyard and driveway"); (Defendants' MOL, p. 30).   It is undisputed that

Plaintiffs took "precautions" "to prevent observation" of the Williams Property "from ground-

level" – *i.e.*, by virtue of the existence of a *privacy* hedge dividing the Williams Property from

the Bean Property – confirming Plaintiffs' unquestionable "reasonable expectation of privacy"

thereat.  (Defendants' SOF,¶¶ 46-47); (Plaintiffs' SOF Response, Ex. 1 at ¶88); *Id.*; *Riley*, 488

U.S. 445.

      Thus, C. Bean's desperate effort to extrapolate from Fourth Amendment police

enforcement cases does nothing to overcome Plaintiffs' "reasonable expectation of privacy" at

the Williams Property in accordance with the well-settled law and undisputed facts.

(Defendants' SOF,¶¶ 46-47); (Plaintiffs' SOF Response, Ex. 1 at ¶88); *Id.*

      <u>Third</u>, C. Bean's argument that Plaintiffs do "not have any reasonable expectation of

privacy" with respect to their "conversation[s]...on the Williams Property" is based entirely on

C. Bean's mischaracterization of the factual record and applicable law and, thus, has no merit

whatsoever.  (Defendants' MOL, p. 31).  Tellingly, C. Bean's sole purported support for his

foregoing specious argument is a single, wholly inapposite case wherein the court held that the

"general rule is that what *a government agent* perceives with his or her unaided senses, when

lawfully present in a place where he or she has a right to be, is not an illegal search" in that

"[e]avesdropping from a place where [an] *officer* has a right to be is a long-accepted technique

of *crime detection*."  *State v. Benton*, 206 Conn. 90, 94-95 (1988)(emphasis added)(internal

citation omitted); (Defendants' MOL, pps. 31-32).

      In point of fact, *relevant and applicable* legal authority confirms Plaintiffs' "reasonable

expectation of privacy" at the Williams Property, including, *inter alia*, with respect to their

private conversations.  *See, e.g., Gullong*, 2017 WL 960989, at *9.  Indeed, it is axiomatic that an

"invasion to seclusion may arise...by the Defendants' use of his senses, with or without mechanical aids to see *or overhear* the plaintiff" and thus "*eavesdropping* may be actionable" with respect to, *inter alia*, "overhear[ing]" conversations at "a person's residence". *Gullong*, 2017 WL 96089, at *9; *Caro v. Weintraub*, No. 3:09-cv-1353, 2010 WL 4514273, at *4 (D. Conn. 2010)("eavesdropping" is "sufficient to state an offensive intrusion" for purposes of an invasion of privacy claim)(citing *Cavallaro v. Rosado*, No. CV054009939, 2006 WL 2949143, at *4 (Conn. Super. Ct. Oct. 5, 2006)); *In re State Police Litig.*, 888 F. Supp. 1235, 1270 (D. Conn. 1995)("[o]ne's seclusion may be as much disrupted by the presence of an electronic ear in a setting where one would normally expect to be alone as it is by the presence of a human ear in the same place")(internal citation omitted).

Glaringly, as purported support for his legally baseless argument, C. Bean falsely contends in Defendants' MOL that "Plaintiffs admit" that their "backyard" at the Williams Property was "within listening distance to the deck of the Bean Residence", which statement is without a shred of factual support (and, notably, none was cited by Defendants) and, in any event, of no legal consequence whatsoever. (Defendants' MOL, pps. 28, 30, fn. 20); *Id.*

Lastly, in Defendants' MOL, C. Bean drastically understates the scope and magnitude of his admitted invasion of Plaintiffs' privacy, which is decidedly <u>not</u> limited to "the July 8, 2016 'incident' in which Christopher Bean...listened to the Plaintiffs' conversation[s]", as stated in Defendants' MOL. (Defendants' MOL, p. 31). Rather, it is undisputed that C. Bean *continuously, repeatedly, and surreptitiously* eavesdropped on conversations, monitored activities occurring at the Williams Property, and reported same to Mr. and Mrs. Bean via text messages on *multiple dates throughout June and July 2016*. (Plaintiffs' SOF Response, ¶¶94-

114); *WVIT*, 1996 WL 649334, at *3 ("the fact of surreptitious[] monitoring...in and of itself...constitutes the intrusion on...privacy").

Accordingly, by virtue of the foregoing, the undisputed facts set forth in Plaintiffs' SOF Response, and C. Bean's failure to satisfy his "burden of showing that there is no genuine issue of fact" with respect to the First Claim, C. Bean is not entitled to summary judgment in his favor with respect to the First Claim. *Anderson*, 477 U.S. at 255-56.

**III.   Defendants Are Not Entitled To Summary Judgment In Their Favor
With Respect To The Second And Third Claims In The Complaint**

Defendants' <u>sole</u> basis for seeking summary judgment in their favor with respect to (i) the Second Claim (against C. Bean, R. Bean, and E. Black) for conspiracy to invade Plaintiffs' privacy, and (ii) the Third Claim (against Mr. and Mrs. Bean) for aiding and abetting C. Bean's tortious invasion of Plaintiffs' privacy, is that purportedly "Plaintiffs cannot prove the underlying tort[]", *i.e.*, "that...Christopher Bean invaded the Plaintiffs' privacy". (Defendants' MOL, pps. 32-34).

As demonstrated, *supra*, and confirmed by the substantial evidence, including C. Bean's deposition testimony, C. Bean indisputably invaded Plaintiffs' privacy by virtue of his admitted eavesdropping, monitoring, and photographing of Plaintiffs and the Williams Property. (Plaintiffs' SOF Response, ¶¶94-114); *Macomber v. Travelers Property & Casualty Corp.,* 277 Conn. 617, 636, 894 A.2d 240 (2006); *Master-Halco, Inc. v. Natarelli, LLC*, 739 F. Supp.2d 104, 106-07 (D. Conn. 2010). Thus, Plaintiffs have clearly "prove[n] the underlying tort" by C. Bean. *Id.*

In Defendants' MOL, Defendants *ignore* the remaining elements for the Second and Third Claims, and thus concede that same have been proven by Plaintiffs. *Id.*; (Defendants' MOL, pps. 32-34). Therefore, in that Defendants' <u>lone</u> basis for seeking summary judgment

with respect to the Second and Third Claims – *i.e.*, that C. Bean purportedly did not "invade[] the Plaintiffs' privacy" – is directly and expressly contradicted by the undisputed facts, Defendants are not entitled to summary judgment in their favor with respect to the Second and/or Third Claims.   *Harp*, 266 Conn. at 778-79; *Supreme*, 2018 WL 1936507, at \*2-3; *Madera*, 2010 WL 3961257, at \*5; *Fink v. Magner*, 988 F. Supp. 70, 72 (D. Conn. 1997).

## IV.   C. Bean Is Not Entitled To Summary Judgment In His Favor With Respect To Plaintiffs' Fourth Claim

Under Connecticut law, to prevail on a claim for negligent infliction of emotional distress, the following elements must be proven:  "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm [the "Third Element"]; and (4) the defendant's conduct was the cause of the plaintiff's distress [the "Fourth Element"]."   *Grasso v. Conn. Hospice, Inc.*, 138 Conn. App. 759, 771 (2012); *Carroll v. Allstate Ins. Co.*, 262 Conn. 433, 448, 815 A.2d 119, 119 (Conn. 2003). Moreover, "intent need not be proven at all to establish a claim of negligent infliction of emotional distress." *Stohlts v. Gilkinson*, 87 Conn. App. 634, 645 (Con. App. Ct. 2005).  Rather, "negligent infliction of emotional distress requires only that the actor's conduct be unreasonable and create an unreasonable risk of foreseeable emotional harm." *Olson v. Bristol-Burlington Health Dist.*, 87 Conn.App. 1, 7 (Conn. App. Ct. 2005).

In Defendants' MOL, C. Bean <u>only</u> argues that the Third Element and Fourth Element have not been satisfied (which the evidence directly refutes (*see, infra*)) and, thus, concedes that Plaintiffs have satisfied the first and second elements of the Fourth Claim, *i.e.*, that C. Bean's "conduct created an unreasonable risk of causing [Plaintiffs] emotional distress" and that Plaintiffs' "distress was foreseeable." *Grasso*, 138 Conn. App. at 771; (Defendants' MOL, pps.

19

34-36). Moreover, C. Bean's specious arguments with respect to the Third Element and Fourth Element are entirely unavailing for the reasons set forth below.

### A. Plaintiffs' Emotional Distress As A Result Of C. Bean's Wrongdoing Is "Severe Enough That It Might Result In Illness Or Bodily Harm"

C. Bean's barebones argument with respect to the Third Element is based entirely on an incorrect recitation of the undisputed facts and a drastic mischaracterization of the applicable law and, thus, does not support Defendants' contention that "[t]he issue of whether the alleged conduct of...Christopher Bean was severe enough that it might result in illness or bodily harm can be decided in [his] favor as a matter of law." (Defendants' MOL, p. 35).

First, C. Bean's focus on "whether [his] alleged *conduct* ... was *severe enough* that it might result in illness or bodily harm" misstates the Third Element and the clear-cut law which confirms that the sole relevant inquiry is whether "the *emotional distress* was *severe enough* that it might result in illness or bodily harm." (Defendants' MOL, p. 35)(emphasis added); *see, e.g., Boccanfuso v. Zygmant*, No. 3:17-cv-00162, 2017 WL 6624011, at *2 (D. Conn. Dec. 28, 2017)(emphasis added).

Second, C. Bean's reliance on *Micek-Holt v. Papageorge* – notably, his only purported legal support for his contention that the Third Element has not been satisfied by Plaintiffs – is legally inapposite. (Defendants' MOL, p. 35); *Micek-Holt*, 180 Conn. App. 540, 570-71 (Conn. App. Ct. 2018). In *Micek-Holt*, the court held that the limited, "specific acts" of plaintiff – who "on more than one occasion took photographs of" the defendant's property "from a vantage point on a neighbor's property", "on another occasion, she told a...visitor that her hostess was paying no rent" and "that at another time [plaintiff] had 'given her the finger'" – do not "amount to extreme or outrageous conduct" for purposes of asserting a claim for *intentional* infliction of emotional distress. *Id.*

20

Moreover, the court in *Micek-Holt* determined that the plaintiff's negligent infliction of emotional distress claim was insufficient on the basis that "[o]ne is hard-pressed to conceive that people as ***sophisticated*** in the ***rough-and-tumble of the oil business*** as were the Papageorges would suffer illness or bodily harm as a result of [plaintiff's] minor incivilities".   *Id.* at 571. Accordingly, the court in *Micek-Holt* did not hold -- as Defendants disingenuously argue – that the three (3) "incivilities" at issue in that case were, as a matter of law, insufficient to demonstrate "severe enough" "emotional distress".   *Id.*   Rather, the court's holding was expressly based on the fact that the defendants were "***sophisticated*** in the ***rough-and-tumble*** of the ***oil business***" – in diametric contrast to Plaintiffs, who are each ***over eighty (80) years old*** and indisputably seek "privacy" while at the Williams Property. *Id.*; (Plaintiffs' SOF Response, Ex. 9 at ¶5).

Third, Defendants' contention that the "minor incivilities" at issue in *Micek-Holt* are "nearly identical to this case" is flatly incorrect and ignores the extensive scope and magnitude of C. Bean's admitted wrongdoing. (Defendants' MOL, p. 35). Specifically, the substantial, undisputed evidence patently confirms an ongoing pattern of misconduct by C. Bean whereby he, *inter alia*, (i) continuously surveilled the private activities occurring at the Williams Property and reported same to Mr. and Mrs. Bean via text messages, (ii) "shadow[ed]" Plaintiffs (while they were at the Williams Property) "step for step" along the hedge dividing the Bean Property from the Williams Property so as to eavesdrop on and obtain private information discussed by Plaintiffs at the Williams Property, (iii) menacingly stared at Plaintiffs while perched atop the seawall adjacent to the Williams Property and belligerently refused to cease same -- despite Mrs. Williams' visible alarm and frightened demand that he do so; and (iv) repeatedly photographed Plaintiffs and the Williams Property for extended periods of time over the course of several days

and disseminated those photographs to Mr. and Mrs. Bean via text messages. (Plaintiffs' SOF

Response, ¶¶94-114).

Fourth, C. Bean's attempt in Defendants' MOL to trivialize the "severe" "emotional

distress" suffered by Plaintiffs as a result of his significant misconduct is without basis.

(Defendants' MOL, pps. 35-37). Astonishingly, in a drastic misstatement of the factual record,

C. Bean contends that Plaintiffs' emotional distress consists *solely* of Mr. Williams being

"'considerably bothered' …because…[C. Bean] did not avert [his] eyes when [he] saw Mr.

Williams…" which "distracted him from marketing a book", and that Mrs. Williams' sole

"emotional distress consisted of being uncertain about whether to move." (Defendants' MOL,

pps. 36-37).

In point of fact, the evidence confirms that, as a result of C. Bean's invasion of Plaintiffs'

privacy, Mrs. Williams was severely "distressed", "visibly and gravely … frightened", and

"can't do anything", and that C. Bean's wrongful acts "are ruining [Mrs. Williams'] life" to the

point that it is "not possible for [Plaintiffs] to endure." (Plaintiffs' SOF Response, ¶¶101, 121-

124). As Mr. McMillan testified, C. Bean's unlawful surveillance of Plaintiffs caused Mrs.

Williams to be "clearly very upset." (Plaintiffs' SOF Response, ¶101); *Vincent v. Essent*

*Healthcare of Conn.*, 470 F. Supp.2d 140, 150 (D. Conn. 2007)("material dispute" regarding

"severity of plaintiff's emotional distress" where she "feels unable do 'basic normal stuff'" and

"feel[s] trapped").

Further, Mr. Williams testified that (i) C. Bean's aforesaid wrongful acts have "been very

tough on [Mrs. Williams] emotionally" resulting in her "emotional state" and the "volatility of

her opinions about whether to stay or go" and that she has been "even more upset than" Mr.

Williams; and that (ii) as a result of "these incidents", Mr. Williams has been "considerably

22

bothered" by C. Bean's "bizarre" and "unsettling" "behavior", "worried about what's going on

[there] with this person looking at you and staring at you", and unable "to concentrate" on other

matters. (Plaintiffs' SOF Response, ¶¶101, 121-124); *Carroll*, 262 Conn. at 448, 815 A.2d at

119 (testimony that plaintiff, *inter alia*, "experienced…a sense of isolation" constitutes

"sufficient evidence that the plaintiff's distress was severe enough").

Accordingly, for the above reasons, Defendants' argument that the Third Element "can be

decided in [C. Bean's] favor as a matter of law" is without merit and does not entitle C. Bean to

summary judgment in his favor with respect to the Fourth Claim. *See, e.g., Bloom v. Town of

Stratford*, No. 3:05-cv-217, 2006 WL 3388396, at *16-17 (D. Conn. Nov. 16, 2006).

### B.   C. Bean's Admitted Misconduct Is Irrefutably The "Cause Of" Plaintiffs' Severe Emotional Distress

In Defendants' MOL, C. Bean misstates the Fourth Element by referring to "Christopher

Bean's alleged *causing injury or bodily harm* to the Plaintiffs". (Defendants' MOL, p.

36)(emphasis added). Rather, the Fourth Element of a negligent infliction of emotional distress

claim requires proof that "defendant's conduct was the cause of the *plaintiff's distress*", not that

such conduct "caus[ed] *injury or bodily harm*". *Grasso*, 138 Conn. App. at 771 (emphasis

added); (Defendants' MOL, p. 36)(emphasis added). Thus, pursuant to such "less demanding

element", "[t]he only requirement is that the distress *might* result in illness or bodily harm".

*Carroll*, 262 Conn. at 448, 815 A.2d at 129 (emphasis in original); *Murphy v. Lord Thompson

Manor, Inc.*, 105 Conn. App. 546, 938 A.2d 1269 (Conn. App. Ct. 2008).

In any event, as discussed, *supra*, Plaintiffs' "emotional distress" was undeniably, solely,

and directly caused by C. Bean's aforesaid admitted interference with Plaintiffs' privacy while

they were at the Williams Property. (Plaintiffs' SOF Response, ¶¶101, 121-124). In point of

fact, in light of the fact that Plaintiffs are each over eighty (80) years old, C. Bean's

23

"behavior...could be found to...support a claim for negligent infliction of emotional distress" due to his "awareness of [Plaintiffs'] susceptibility" to same. (Plaintiffs' SOF Response, Ex. 9 at ¶5); *Copeland v. Home & Community Health Servs., Inc.*, 285 F.Supp.2d 144, 153 (D. Conn. 2003).

Thus, by virtue of the foregoing, C. Bean is not entitled to summary judgment with respect to the Fourth Claim for negligent infliction of emotional distress. *Id.*

V.     **Mr. and Mrs. Bean Are Not Entitled To Summary Judgment In Their Favor With Respect To Plaintiffs' Fifth Claim For Aiding And Abetting Negligent Infliction Of Emotional Distress**

In Defendants' MOL, Mr. and Mrs. Bean's lone purported basis for seeking summary judgment with respect to the Fifth Claim (for aiding and abetting C. Bean's negligent infliction of emotional distress) is that "there is no underlying tort". (Defendants' MOL, p. 37).  By ignoring each of the remaining elements of an aiding and abetting claim, Mr. and Mrs. Bean plainly concede that Plaintiffs have satisfied same. (Defendants' MOL, p. 37).

As demonstrated, *supra*, and in Plaintiffs' SOF Response, Plaintiffs have proven the "underlying tort" -- *i.e.*, C. Bean's negligent infliction of emotional distress on Plaintiffs – and, therefore, Mr. and Mrs. Bean are decidedly not entitled to summary judgment in their favor with respect to the Fifth Claim on such basis. (Defendants' MOL, p. 37); (Plaintiffs' SOF Response, ¶¶94-114).

VI.     **Defendants Are Not Entitled To Summary Judgment In Their Favor With Respect To Plaintiffs' Sixth Claim For A Permanent Injunction**

Defendants' arguments in support of their demand for summary judgment with respect to the Sixth Claim are based entirely on a grave mischaracterization of Plaintiffs' allegations in the Complaint, and rely on a wholly inapplicable body of law. (Defendants' MOL, pps. 38-39).

It is undisputed that, as expressly pled in the Sixth Claim, Plaintiffs seek an injunction "permanently enjoining each of the Defendants from", *inter alia*, "monitoring, spying on, recording, photographing, video-recording, and/or audio recording…the Williams and/or their guests and/or the Williams Property", "transferring, disseminating, sharing, publicizing, and/or otherwise disclosing….any images, recordings, and/or photographs of the Williams, their guests, and/or the Williams Property", "contacting, communicating with, and/or harassing the Williams" and/or "otherwise interfering with and/or invading Plaintiffs' rights to privacy".  (Plaintiffs' SOF Response, Ex. 9 at ¶81).

Yet, in Defendants' MOL, they egregiously misstate the relief requested by Plaintiffs in the Sixth Claim by hypothesizing – in contravention of what Plaintiffs *actually, expressly* demand in the Sixth Claim (*see, supra*) – that Plaintiffs "are *essentially* trying to prevent the Bean Family from…the lawful use and enjoyment of their own private property" "because they believe that the Bean Family can see and hear the Plaintiffs from their deck."  (Defendants' MOL, pps. 38-39)(emphasis added).  In that the Sixth Claim is clearly barren of any such demand, Defendants' inappropriately deceptive characterization of the Sixth Claim must be disregarded.

Further, despite the fact that the Sixth Claim, on its face, seeks to enjoin Defendants' wrongful <u>conduct</u> directed at the "Williams and/or their guests and/or the Williams Property" – including, *inter alia*, "monitoring", "photographing", and "harassing" Plaintiffs – Defendants argue that Plaintiffs are not entitled to a permanent injunction with respect to such <u>conduct</u> in that they purportedly "could have raised any concerns about the ***height of the deck*** at the Bean Residence" or "opposed" "the ***renovation*** of the Bean Residence" by "join[ing] the lawsuit brought by several neighbors after the application was approved."  (Defendants' MOL, p.

39)(emphasis added).  Defendants' outlandish argument is entirely immaterial, in that the Sixth

Claim decidedly does <u>not</u> seek to enjoin any aspect of the physical "*renovation* of the Bean

Residence"; instead, in the Sixth Claim, Plaintiffs solely seek to enjoin Defendants' unlawful

*conduct* which constitutes an invasion of Plaintiffs' privacy.  (Plaintiffs' SOF Response, Ex. 9 at

¶81); (Defendants' MOL, p. 39)(emphasis added).

     Bootstrapping their aforesaid mischaracterization of the allegations in the Sixth Claim,

Defendants rely on facially inapplicable legal standards pertinent to claims for "private

enforcement of…zoning regulations", which are entirely irrelevant to the Sixth Claim and the

permanent injunction sought thereby.  (Defendants' MOL, pps. 38-39); (Plaintiffs' SOF

Response, Ex. 9 at ¶81).  Astoundingly, in Defendants' MOL, Defendants falsely contend that

Plaintiffs "seek[] a permanent injunction in a *private enforcement action*" (*i.e.*, "private

enforcement *of the zoning regulations*"), which is conclusively refuted by the Sixth Claim,

which does not contain any demand to "private[ly] enforce[]" "zoning regulations".  (Plaintiffs'

SOF Response, Ex. 9); (Defendants' MOL, p. 38); *Steroco, Inc. v. Szymanski*, 166 Conn. App.

75 (2016)(cited in Defendants' MOL, p. 38).   As such, Defendants' arguments with respect to

"private enforcement action[s]" have absolutely no bearing whatsoever on the Sixth Claim.  *Id.*

In point of fact, by virtue of their strained reliance on such a frivolous argument, Defendants

clearly concede that summary judgment in their favor is <u>not</u> warranted with respect to the Sixth

Claim – *as pled in the Complaint.*   (Defendants' MOL, pps. 38-39).

     Additionally, directly contradicting their own argument (*i.e.*, that the Sixth Claim

purportedly seeks relief with respect to "the *renovation* of the Bean Residence" and/or "the

*height of the deck*" at the Bean Property), Defendants alternatively argue that a permanent

injunction is not warranted on the conclusory basis that "there is nothing here for the Court to

enjoin" because, purportedly, Defendants "never spied on or otherwise surveilled the Plaintiffs." (Defendants' MOL, p. 38). Defendants' wholly unsubstantiated denial does nothing to overcome C. Bean's expressly admitted misconduct – *i.e.*, monitoring, eavesdropping on, and photographing Plaintiffs and the Williams Property – which was overwhelmingly established in discovery. (Plaintiffs' SOF Response, ¶¶94-114).

Accordingly, Defendants' demand for summary judgment in their favor with respect to the Sixth Claim must be denied outright for the reasons set forth above.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court issue an order (i) denying Defendants' motion for summary judgment in its entirety, and (ii) granting such other and further relief in favor of Plaintiffs, and against Defendants, as this Court deems just and proper under the circumstances.

Dated:  September 14, 2018
        New York, New York

LAW OFFICES OF DAVID C. BERG

_____/s/ David C. Berg_____
By: David C. Berg, Esq. (phv08546)
    Anne M. Christon, Esq. (phv08547)
425 Madison Avenue, 19th Floor
New York, New York 10017
Tel: (212) 829-0400
Fax: (212) 829-9398
Emails: davidberg@dberglaw.com
        annechriston@dberglaw.com
*Attorneys for Plaintiffs*
*(Admitted Pro Hac Vice)*

To:    James R. Nault, Esq.
       Robinson & Cole, LLP
       280 Trumbull Street
       Hartford, CT 06103
           – and –
       Michael Ryan, Esq.
       Michael Barbarula, Esq.
       Ryan, Ryan Deluca LLP

707 Summer Street
Stamford, CT 06901
*Attorneys for Defendants*